UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:25-CV-20017-JEM

THE HONORABLE JOSE E. MARTINEZ

| | |
|---|---|
| MELANIE DAMIAN, in her capacity as a court-appointed Receiver, on behalf of Surge Capital Ventures, LLC and others similarly situated,<br><br>       Plaintiff,<br><br>   -against-<br><br>DEEL INC., a Delaware corporation, DPayments LLC, a Delaware limited liability company, and Jeremy Berger, individually,<br><br>       Defendants. | ORAL ARGUMENT REQUESTED |

**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.   PLAINTIFF'S CIVIL RICO CLAIM IS BUILT ON BASELESS ALLEGATIONS AND MUST BE DISMISSED. ........................................................................................... 5

A.   Plaintiff Lacks Standing And Cannot State A RICO Claim Because There Is No Concrete Injury to Plaintiff's Business Or Property. ................................................................................. 6

B.   Plaintiff Fails To Establish Proximate Cause Between Defendants' Actions and Any Alleged Injuries. ................................................................................................................................... 8

C.   There Is No Distinct RICO Enterprise, Rendering Plaintiff's Claims Legally Deficient. ..... 10

D.   There Is No Plausible Pattern of Racketeering Activity. ........................................................ 12

i.   Plaintiff Fails To Plead Money Laundering as a Predicate Act. ........................................... 13

ii.   Plaintiff's Allegations of Violations of the Bank Secrecy Act Do Not Constitute Predicate Acts. ............................................................................................................................................ 14

iii.   Plaintiff's Unlicensed Money Transmission Allegations Lack Specificity. ...................... 15

II.   RECEIVER'S INABILITY TO IDENTIFY VIABLE CLAIMS WARRANTS DISMISSAL WITH PREJUDICE. ........................................................................................... 16

III.   IF THE COURT DOES NOT DISMISS, THE COURT SHOULD TRANSFER THE CASE TO THE MIDDLE DISTRICT OF FLORIDA. ............................................................... 16

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ................................................5

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006)........................................................3, 9

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..........................................................5

*Baloco v. Drummond Co.*,
    767 F.3d 1229 (11th Cir. 2014) ...............................................1

*Birmingham v. Doe*,
    No. 21-CV-23472-SCOLA/GOODMAN, 2022 WL 18134962 (S.D. Fla. Dec.
    6, 2022) ..................................................................13

*BMA LLC v. HDR Glob. Trading Ltd.*,
    No. 20-CV-03345-WHO, 2021 WL 4061698 (N.D. Cal. Sept. 7, 2021) ...............15

*Cedric Kushner Promotions, Ltd. v. King*,
    533 U.S. 158 (2001)........................................................11

*Cisneros v. Petland, Inc.*,
    972 F.3d 1204 (11th Cir. 2020) .........................................3, 12, 16

*Cont'l 332 Fund, LLC v. Albertelli*,
    No. 20-13133, 2021 WL 3184586 (11th Cir. July 28, 2021)......................12

*Cruz v. Credit Control Servs., Inc.*,
    No. 217CV1994ADSGRB, 2017 WL 5195225 (E.D.N.Y. Nov. 8, 2017) .................4

*Damian v. Meftah*,
    No. 22-CV-02573-JCS, 2022 WL 17835612 (N.D. Cal. Dec. 21, 2022) ...............16

*Damian v. Staub*,
    2:24-CV-00997 (M.D. Fla. 2024) .............................................17

*Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*,
    No. 2:09CV192-MHT, 2011 WL 2893629 (M.D. Ala. July 19, 2011)...........3, 10, 11

*Davis v. Pro. Parking Mgmt. Corp.*,
    No. 22-14026, 2023 WL 4542690 (11th Cir. July 14, 2023) (per curiam)...............8

*DJ Lincoln Enterprises, Inc. v. Google, LLC*,
No. 2:20-CV-14159, 2021 WL 3079855 (S.D. Fla. July 21, 2021), *aff'd*, No.
21-12894, 2022 WL 203365 (11th Cir. Jan. 24, 2022)............................................................11

*Ellis v. Warner*,
No. 15-10134-CIV, 2017 WL 634287 (S.D. Fla. Feb. 16, 2017).........................................3, 13

*Entretelas Americanas S.A. v. Soler*,
No. 19 Civ. 03658 (LAK) (RWL), 2020 WL 9815186 (S.D.N.Y. Feb. 3, 2020)....................14

*Funding Metrics, LLC v. Decision One Debt Relief LLC*,
No. 18-81061-CIV, 2019 WL 3759111 (S.D. Fla. Aug. 9, 2019) .............................................8

*Halpin v. David*,
No. 4:06CV457-RH/WCS, 2009 WL 2960936 (N.D. Fla. Sept. 10, 2009) .............................6

*Heffernan v. HSBC Bank USA*,
No. 1:99CV07981, 2001 WL 803719 (E.D.N.Y. Mar. 29, 2001) ...........................................14

*Hunt v. Am. Bank & Tr. Co. of Baton Rouge*,
606 F. Supp. 1348 (M.D. La. 1985)........................................................................................16

*Isaiah v. JPMorgan Chase Bank*,
960 F.3d 1296 (11th Cir. 2020) ................................................................................................9

*Kelley v. BMO Harris Bank, N.A.*,
115 F.4th 901 (8th Cir. 2024) ...................................................................................................9

*Klayman v. Clinton*,
No. 15-CV-80388, 2015 WL 10857500 (S.D. Fla. Aug. 11, 2015) ..................................6, 7, 8

*Lockheed Martin Corp. v. Boeing Co.*,
357 F. Supp. 2d 1350 (M.D. Fla. 2005)..................................................................................11

*Magee v. Gen. Motors LLC*,
No. EDCV231715JGBSHKX, 2023 WL 7927745 (C.D. Cal. Nov. 15, 2023).......................2

*Marrero v. Benitez*,
No. 1:17-CV-21026-UU, 2017 WL 7796341 (S.D. Fla. Aug. 3, 2017) ...................................8

*Movimiento Democracia, Inc. v. Chertoff*,
417 F. Supp. 2d 1350 (S.D. Fla. 2006) .....................................................................................5

*Nicklaw v. CitiMortgage, Inc.*,
855 F.3d 1265 (11th Cir. 2017) ................................................................................................5

*Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*,
437 F.3d 1145 (11th Cir. 2006) ................................................................................................9

*Omnipol, A.S. v. Worrell*,
    421 F. Supp. 3d 1321 (M.D. Fla. 2019) ................................................................13, 16

*Pinares v. United Techs. Corp.*,
    No. 10-80883-CIV, 2018 WL 11422987 (S.D. Fla. Feb. 13, 2018) .......................................12

*Pincus v. Speedpay, Inc.*,
    161 F. Supp. 3d 1150 (S.D. Fla. 2015) ................................................................15

*Ray v. Spirit Airlines, Inc.*,
    836 F.3d 1340 (11th Cir. 2016) ....................................................... *passim*

*Redman v. Francis David Corp.*,
    No. 1:10-cv-2004, 2012 WL 4504484 (N.D. Ohio Sept. 30, 2012) .......................................15

*Rumble v. Waterhouse*,
    WDO, 2007 WL 2506698 (M.D. Ga. Aug. 30, 2007) ....................................................7

*SEC v. Natural Diamonds Inv. Co.*,
    No. 9:19-CV-80633, 2019 WL 2583863 (S.D. Fla. June 11, 2019) ......................................4

*Simpson v. Sanderson Farms, Inc.*,
    744 F.3d 702 (11th Cir. 2014) .......................................................................10

*Singh v. Illusory Systems, Inc.*,
    727 F. Supp. 3d 500 (D. Del. 2024)...............................................................2, 9

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016), *as revised* (May 24, 2016)....................................................8

*Thermal Technologies, Inc. v. Dade Service Corp.*,
    282 F. Supp.2d 1373 (S.D. Fla. 2003) ................................................................17

*Trafalgar Capital Specialized Inv. Fund v. Hartman*,
    878 F. Supp. 2d 1274 (S.D. Fla. 2012) ...............................................................17

*U.S. Bank Nat. Ass'n v. Capparelli*,
    No. 13-80323-CIV, 2014 WL 2807648 (S.D. Fla. June 20, 2014)...........................................7

*Viridis Corp. v. TCA Global Credit Master Fund, LP*,
    155 F. Supp. 3d 1344 (S.D. Fla. 2015) ...............................................................11

*Virtus Pharms., LLC v. Woodfield Distribution, LLC*,
    No. 8:21-CV-02427-WFJ-SPF, 2024 WL 4235895 (M.D. Fla. Sept. 19, 2024).......................9

*Weiss v. Sherloq Revenue Sols., Inc.*,
    No. 19-CV-7103 (NSR), 2021 WL 965810 (S.D.N.Y. Mar. 12, 2021)....................................2

*Windmere Corp. v. Remington Prods., Inc.*,
    617 F. Supp. 8 (S.D. Fla. 1985) ...........................................................................17

**Statutes**

18 U.S.C. § 1391(b)(1) ...........................................................................................17

18 U.S.C. § 1957 .....................................................................................................13

18 U.S.C. § 1960 .....................................................................................................15

28 U.S.C. § 1404(a) ................................................................................................16

28 U.S.C. § 1927 .......................................................................................................1

31 U.S.C. § 5318(h) ..........................................................................................13, 14

Minnesota Stat. § 53B.36 .......................................................................................16

Racketeer Influenced and Corrupt Orgs. Act, 18 U.S.C. § 1961 *et seq.*.............................. *passim*

**Other Authorities**

Fed. R. Civ. P. 11 .....................................................................................................1

Fed. R. Civ. P. 12 ..................................................................................................5, 8

## **INTRODUCTION**

Plaintiff's single-count Complaint—riddled with baseless allegations, gross inaccuracies, conjecture, and downright falsehoods—is the latest in a coordinated effort by a major investor in Deel's primary competitor seeking to tarnish Deel's stellar reputation as the leading workforce solutions company in the world, operating in over 150 countries and supporting over 35,000 customers globally, including some of the world's biggest and best companies. The Complaint fails to state a viable cause of action for numerous reasons and should be dismissed in its entirety.

This case is a misguided attempt by a receiver, standing in the shoes of Surge Capital Ventures LLC ("Surge Capital" and related entities involved in fraud, to seek a windfall recovery from an innocent party for the wrongdoing of another. Specifically, Plaintiff is attempting to impute liability to Deel, Inc. ("Deel"), DPayments LLC ("DPayments"), and employee Jeremy Berger ("Mr. Berger," and with Deel and DPayments, the "Defendants") for the wrongful acts of Brent Seaman ("Mr. Seaman").

Mr. Seaman's misconduct is well-documented and acknowledged in the Complaint and in a separate SEC action, where Deel, DPayments, and Mr. Berger never were accused of any wrongdoing by the SEC. *See SEC v. Seaman*, No. 1:23-cv-22791-KMW, Compl. (S.D. Fla. July 27, 2023) ("SEC Compl.") (attached as Ex. A).[1] According to the record in that enforcement action, Mr. Seaman transferred ill-gotten funds from his own entities to Surge Capital, an entity never accused of any wrongdoing by the SEC that purportedly used Deel's platform to pay its own vendors. *See SEC v. Seaman*, Receiver's Fifth Status Report, Dkt. 97 at 16 (Jan. 13, 2025) (attached as Ex. B). Mr. Seaman recently consented to a judgment that imposed approximately $3.34 million in disgorgement and $1 million in civil penalties. *See id*., Dkt. 95 at 1, 5 (Dec. 13, 2024) ("SEC Consent Decree") (attached as Ex. C). Deel has no affiliation with Seaman. This conduct does not, and cannot, give rise to RICO liability against Defendants. Plaintiff therefore resorts to conclusory and outright false allegations that Defendants engaged in unspecified wrongful transactions.[2]

---

[1] The Court can take judicial notice of other pending litigation. *Baloco v. Drummond Co.*, 767 F.3d 1229, 1241 (11th Cir. 2014).

[2] In in interests of judicial economy, Defendants have deferred seeking any sanctions or relief under Rule 11, 28 U.S.C. § 1927, or pursuant to the Court's inherent authority so that the Court can instead allocate its resources in this case to Defendants' motion to dismiss. Defendants,

Plaintiff's allegations against DPayments are foreclosed by the SEC record. The transfers involving Surge Capital were completed by the time the SEC filed its complaint in July 2023, but DPayments was not even formed until months later in December 2023. *See* DPayments LLC Cert. of Formation (attached as Ex. D).[3] Confirming the errors in Plaintiff's Complaint, the court in the SEC action entered an Asset Freeze Order against Seaman and Surge Capital on October 27, 2023, **before DPayments' December 2023 formation**, foreclosing any plausible allegation that DPayments participated in any misconduct involving Surge Capital. *See SEC v. Seaman*, Order Granting Pl.'s Unopposed Mot. for Asset Freeze Order, Dkt. 17 (attached as Ex. E).

The SEC already has pursued and resolved claims against Seaman, and Plaintiff's attempt to redirect liability to Defendants is legally and factually unsound. The Court should put an end to this baseless litigation, and it has four independent bases upon which to do so:

**First**, Plaintiff lacks standing to assert a RICO claim because there is no concrete injury traceable to Defendants' conduct. The Complaint's reliance on unrelated allegations—such as purported sanctions violations and compliance deficiencies—fails to establish a causal connection between Defendants' actions and any purported harm to Plaintiff or Surge Capital. Plaintiff's allegations are wrong and entirely baseless. But even taking those allegations as true on a motion to dismiss, they have nothing to do with any harm to Plaintiff or Surge Capital. Without a plausible and specific allegation of injury, Plaintiff's claims must be dismissed. *See, e.g.*, *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016).

**Second**, Plaintiff cannot satisfy the proximate cause element of RICO. Even if there were a plausible connection to Defendants (and there is not), Mr. Seaman's misconduct is a key intervening cause that severs any causal link to Defendants. *See, e.g.*, *Singh v. Illusory Systems, Inc.*, 727 F. Supp. 3d 500, 508-09 (D. Del. 2024). The SEC enforcement record confirms that Mr. Seaman's actions—not any misconduct by Defendants or deficiency in their operations—were the direct cause of harm to Plaintiff and Surge Capital. Plaintiff's speculative allegations about

---

however, are continuing to confer with Plaintiff's counsel and expressly reserve all of their rights to seek such relief.

[3] "Courts regularly take judicial notice of certificates of incorporation." *Magee v. Gen. Motors LLC*, No. EDCV231715JGBSHKX, 2023 WL 7927745, at *4 n.1 (C.D. Cal. Nov. 15, 2023). *See also Weiss v. Sherloq Revenue Sols., Inc.*, No. 19-CV-7103 (NSR), 2021 WL 965810, at *4 (S.D.N.Y. Mar. 12, 2021) "[T]he Court is entitled to take sua sponte judicial notice of these public records as the filing of articles of incorporation is not a controversial fact.").

licensing and compliance do not satisfy the proximate cause requirement under RICO. *See, e.g.*, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006).

**Third**, there is no distinct RICO enterprise here as a matter of law. Plaintiff's purported "enterprise" consists of Deel, its affiliate DPayments, and an employee, Mr. Berger. Eleventh Circuit precedent precludes a RICO enterprise composed solely of a corporation and agents or employees. *See, e.g.*, *Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*, No. 2:09CV192-MHT, 2011 WL 2893629, at *3 (M.D. Ala. July 19, 2011). Moreover, Plaintiff alleges no unlawful common purpose beyond the ordinary pursuit of profit, which is insufficient to establish a RICO enterprise. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020).

**Finally**, Plaintiff cannot come close to satisfying the requisite "pattern of racketeering activity" under RICO. To satisfy this standard, Plaintiff plausibly must plead at least two predicate acts. Yet the Complaint relies on insufficient, conclusory assertions about sanctions, unrelated compliance matters, and other speculative claims. *Cf. Ellis v. Warner*, No. 15-10134-CIV, 2017 WL 634287, at *10 (S.D. Fla. Feb. 16, 2017) (finding "Plaintiff has failed to adequately allege the predicate act of money laundering" because "Plaintiff has recited only a bare conclusion that Defendants laundered funds"). These allegations are woefully deficient.

For these reasons and those that follow, the Court should dismiss the Complaint. Because no amendment could cure these numerous deficiencies, the Court should not allow leave to amend. If the Court does not dismiss, the Court should transfer this action to the Middle District of Florida in the interests of justice because two of the Defendants are based there and the underlying actions allegedly took place there.

## BACKGROUND

Deel is an integrated human resources platform founded in 2019, designed to simplify global payroll, compliance, and workforce management. Deel helps facilitate the processing of payroll and certain other payments across international jurisdictions. Deel operates in over 150 countries and, through DPayments, holds more than two dozen money transmission and payroll processing licenses, ensuring compliance with regulatory requirements across its global footprint. *See* NMLS Report (attached as Ex. F).[4] Deel's innovation and compliance practices have earned

---

[4] "It is entirely proper for the Court to take judicial notice of public[ly] available documents on government websites, including those from the Nationwide Multistate Licensing System

it numerous accolades, including a place on Forbes' Best Startup Employers list for multiple consecutive years and recognition as one of the Forbes Cloud 100 companies. Now in its sixth year, Deel is valued at $12 billion and generates over $500 million in annual recurring revenue.

Mr. Seaman is a third party with absolutely no affiliation to Deel. In July 2023, the SEC brought an action against Seaman and four LLCs he managed (Accanito Equity I–IV). SEC Compl. ¶ 1. The SEC alleged that Mr. Seaman raised $35 million from dozens of investors, promising them "guaranteed" annual returns of 18% to 48% and that investor funds only would be used to trade commodities and currencies and to invest in start-up technology and software companies. *Id*. ¶¶ 1–2. The SEC alleged, however, that not all investments were used for those purposes and that investors sent their money to the accounts of two companies Mr. Seaman solely owned and controlled: Surge LLC and Accanito Capital Group, LLC. *Id*. ¶ 3. Mr. Seaman then misappropriated these funds for his personal benefit or used them to cover distributions to other investors despite his own trading losses, among other unlawful conduct. *Id*. Mr. Seaman and the SEC ultimately consented to entry of a final judgment against Mr. Seaman, and the Court ordered him to pay over $4 million in disgorgement and civil penalties. *See* SEC Consent Decree (Ex. B).

The SEC Complaint explains that Surge Capital "received investors' proceeds emanating from [the SEC] Defendants' securities fraud and holds assets belonging to the Accanito Equity LLCs." SEC Compl. ¶ 13. As such, the SEC named Surge Capital as a relief defendant. A relief defendant "has no ownership interest in the property that is the subject of litigation but may be joined in the lawsuit to aid the recovery of relief." *See SEC v. Natural Diamonds Inv. Co.*, No. 9:19-CV-80633, 2019 WL 2583863, at *5 (S.D. Fla. June 11, 2019). "A relief defendant is not accused of wrongdoing," and equitable relief against a relief defendant is available only if the relief defendant "received ill-gotten funds" and lack "a legitimate claim to those funds." *Id*.

Deel, DPayments, and Mr. Berger had no involvement in Mr. Seaman's unlawful conduct—and the Complaint does not allege otherwise. Defendants are not mentioned anywhere in the SEC Complaint, and the SEC did not otherwise allege any wrongdoing by Defendants. Instead, as Plaintiff recently reported to the court in the SEC matter, Deel's role merely was to enable Surge Capital to pay vendors, *see SEC v. Seaman*, Receiver's Fifth Status Report, Dkt. 97 at 16 (Jan. 13, 2025) (explaining that Deel was a "payment processor" for Surge Capital) (attached

---

('NMLS')." *Cruz v. Credit Control Servs., Inc.*, No. 217CV1994ADSGRB, 2017 WL 5195225, at *3 (E.D.N.Y. Nov. 8, 2017).

as Ex. F), a standard service Deel provides to clients across jurisdictions. Plaintiff makes no allegation—nor is there any basis to allege—that Deel conspired with Mr. Seaman to deceive investors or played any role in his fraudulent schemes. Plaintiff also fails to allege that Deel knew or should have known that any specific transaction by Surge Capital was improper. Plaintiff does not connect Mr. Seaman's misconduct to the unrelated and baseless issues raised in the Complaint, such as purported sanctions violations or activities involving Arival Bank. Finally, Plaintiff offers no explanation for how Defendants' alleged licensing deficiencies—which have no connection to Mr. Seaman's fraud—could have facilitated Mr. Seaman's unlawful activity.

## LEGAL STANDARD

For a court to adjudicate a case, the plaintiff must establish standing to sue under Article III. Without standing, the court lacks subject matter jurisdiction, and dismissal under Rule 12(b)(1) is proper. *Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1350, 1352 (S.D. Fla. 2006). To establish Article III standing, a plaintiff must demonstrate: (1) a concrete injury; (2) traceable to the conduct of the defendant; that (3) can be redressed by the Court. *See Nicklaw v. CitiMortgage, Inc.*, 855 F.3d 1265 (11th Cir. 2017) (denial of rehearing *en banc*).

Even if jurisdiction is proper, a complaint that fails to state a claim warrants dismissal under Rule 12(b)(6). To survive a motion to dismiss, the plaintiff must allege sufficient facts to state a claim that is "plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A plausible claim requires more than mere speculation; it must present factual allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory statements and "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient to meet this standard. *Id.* (quoting *Twombly*, 550 U.S. at 557). A complaint that relies on generalized allegations or fails to present a coherent narrative invites dismissal at the pleading stage.

## ARGUMENT

### I.   PLAINTIFF'S CIVIL RICO CLAIM IS BUILT ON BASELESS ALLEGATIONS AND MUST BE DISMISSED.

RICO establishes a narrowly tailored private right of action that does not sweep in the allegations Plaintiff has made here. To state a viable civil claim under RICO, a plaintiff must demonstrate that a defendant (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity involving at least two predicate acts. *Ray*, 836 F.3d at 1348. Additionally, a

plaintiff must show (1) the requisite injury to business or property, and (2) that such injury was by reason of the substantive RICO violation. *Id.* The injury must be "direct, not incidental or indirect." *Halpin v. David*, No. 4:06CV457-RH/WCS, 2009 WL 2960936, at *3 (N.D. Fla. Sept. 10, 2009) (dismissing RICO claims for failure to adequately allege injury suffered).

The Complaint in this case fails at each step in the analysis. Plaintiff's allegations are untethered to any concrete injury, lack the requisite causation, fail to identify a distinct RICO enterprise, and do not plead the predicate acts sufficiently. Each of these fatal defects warrants dismissal independently and, together, they squarely foreclose Plaintiff's claims. The Court should dismiss the Complaint without leave to amend to prevent further waste of judicial resources and the perpetuation of groundless accusations.

### A. Plaintiff Lacks Standing And Cannot State A RICO Claim Because There Is No Concrete Injury to Plaintiff's Business Or Property.

At the heart of the Plaintiff's Complaint lies a fundamental deficiency: Plaintiff fails to identify a concrete and particularized injury to Plaintiff's (or Surge Capital's) business or property caused by Defendants. The lack of injury and a causal connection to Defendants are each fatal to Plaintiff's claim. Plaintiff purports to be acting as a court-appointed receiver to bring claims on behalf of Surge Capital and other entities that were engaged in fraud. Instead of articulating specific harm to Surge Capital or any other entity, Plaintiff relies on vague and conclusory allegations, such as the bald assertion that Plaintiff and the putative class "have been injured in their business or property." Compl. ¶ 158. These generalized statements, unsupported by factual details, cannot sustain a RICO claim and do not support Article III standing. *Klayman v. Clinton*, No. 15-CV-80388, 2015 WL 10857500, at *6 (S.D. Fla. Aug. 11, 2015).

RICO demands specific allegations of concrete injury directly tied to a defendant's alleged misconduct. *Ray*, 836 F.3d at 1350 ("[A] showing of direct injury is required to sustain a RICO claim."). Plaintiff's vague assertions of harm and reliance on disconnected regulatory allegations are insufficient to meet this standard. Analogous to a single dart thrown by a blindfolded person, Plaintiff loosely alludes to $2,268,912.43 in unlicensed money transmissions, Compl. ¶ 6, but the Complaint offers no explanation as to how these transmissions—or their purportedly unlicensed nature—harmed Plaintiff or Surge Capital. If Plaintiff knows this specific amount down to the penny, she also should know the nature of any alleged harm and how it purportedly ties Defendants together to Surge Capital. The Complaint alleges no such connection because there is none. Instead, Plaintiff invites this Court to speculate about the connection between Defendants' alleged

actions and Plaintiff's purported injuries—an approach that courts consistently reject. As courts in this District have made clear, a RICO claim requires not only a tangible and direct injury but also a clear causal link between the alleged conduct and that injury. *See, e.g.*, *Klayman*, 2015 WL 10857500, at \*6 ("[V]ague and speculative allegations of economic injury are insufficient to state an injury to business or property under RICO. . . . RICO standing requires a plaintiff's injury to be *directly* caused by a predicate racketeering act.") (emphasis in original). Plaintiff's claims lack such a connection and fail as a matter of law.

Courts routinely reject RICO claims predicated on speculative or unsupported assertions of harm like those alleged insufficiently here. For instance, in *Rumble v. Waterhouse*, a putative plaintiff brought RICO claims against an insurer, claiming that it had sold him fraudulent insurance. No. 5:05CV133 WDO, 2007 WL 2506698, at \*8 (M.D. Ga. Aug. 30, 2007). The plaintiff alleged that his injury was that, while without insurance, he was damaged "by the possibility that someone ***could have*** filed a claim that ***may not*** have been paid." *Id.* The court held this was "far from a claim that states a cognizable RICO injury" and dismissed the claim. *Id.* Similarly, in *U.S. Bank Nat. Ass'n v. Capparelli*, the plaintiff alleged that efforts to modify a loan violated RICO, in efforts to bring a foreclosure claim against her and improperly coerce her into relinquishing her property rights. No. 13-80323-CIV, 2014 WL 2807648, at \*8 (S.D. Fla. June 20, 2014). The court held that the plaintiff failed to "show the requisite injury to business or property that was the result of the alleged substantive RICO violation." *Id.* The court dismissed the claims as "merely conclusory and unsupported by any factual allegations." *Id.* (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 949 (11th Cir. 1997)). Plaintiff's vague and insufficient allegations of harm mirror those in *Rumble* and *Capparelli*, failing to meet RICO's injury requirements.

Plaintiff's allegations regarding Defendants' supposed efforts to evade Russian sanctions and the regulatory history of Arival Bank fare no better. *See* Compl. ¶¶ 59–98. Although Plaintiff speculates that Defendants made "it easier to do business with our nation's enemies in violation of national sanctions," *id.* ¶ 32, that allegation is utterly false and entirely irrelevant. Plaintiff does not (and cannot) allege any connection between Mr. Seaman's fraudulent conduct or the transfers involving Surge Capital on the one hand and Russia, Arival Bank, or any alleged sanctions violations on the other. The SEC, in its complaint against Mr. Seaman, made no reference to these issues, further underscoring their irrelevance and baselessness. *See generally* SEC Compl.

Plaintiff's inability to tie these speculative allegations regarding sanctions to any of the transfers at issue demonstrates the Complaint's lack of factual and legal merit. Instead of articulating specific harm tied to Defendants' alleged conduct, Plaintiff offers vague and disconnected accusations that distract from the core deficiencies in her Complaint. Courts consistently have dismissed such baseless allegations as insufficient to establish standing under Article III. *See, e.g., Marrero v. Benitez*, No. 1:17-CV-21026-UU, 2017 WL 7796341, at *6 (S.D. Fla. Aug. 3, 2017) (dismissing complaint where plaintiff's conclusory allegations as to injury did not confer them Article III standing); *Klayman*, 2015 WL 10857500, at *5 (dismissing complaint where plaintiff lacked Article III standing to bring RICO claim for failure to demonstrate injury). The allegations related to Russia and Arival Bank, like the rest of Plaintiff's claims, fail to establish any plausible harm or connection to Defendants' actions and should be disregarded in their entirety.

To be sure, regulatory violations alone do not establish injury for purposes of Article III standing—much less standing under RICO—and Plaintiff has not pleaded adequately such violations here. Defendants vigorously deny any regulatory violations. But regulatory violations alone, even if proven, cannot substitute for concrete injury. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016), *as revised* (May 24, 2016) (observing that "a bare procedural violation, divorced from any concrete harm" cannot "satisfy the injury-in-fact requirement of Article III"); *Davis v. Pro. Parking Mgmt. Corp.*, No. 22-14026, 2023 WL 4542690, at *2 (11th Cir. July 14, 2023) (per curiam) ("our case law is clear that a statutory violation, by itself, does not create an injury").

Plaintiff's failure to allege a cognizable injury to business or property renders the Complaint legally insufficient under Article III and RICO. Generalized allegations of regulatory violations or speculative harm cannot substitute for allegations of specific injury. *See Klayman*, 2015 WL 10857500, at *6. The Court should therefore dismiss the Complaint under Rule 12(b)(1) and Rule 12(b)(6).

### B. Plaintiff Fails To Establish Proximate Cause Between Defendants' Actions and Any Alleged Injuries.

Even if Plaintiff could establish standing—which Plaintiff cannot do—the Complaint still fails to allege proximate cause because it does not account for the misconduct of an unaffiliated third party who purportedly misused Deel's platform. Mr. Seaman's illegal conduct is a key intervening cause that cuts off any liability Defendants might otherwise have to Plaintiff. *See, e.g., Funding Metrics, LLC v. Decision One Debt Relief LLC*, No. 18-81061-CIV, 2019 WL 3759111, at *4 (S.D. Fla. Aug. 9, 2019) (dismissing RICO claims based on intervening causes). The SEC

enforcement action, cited extensively in the Complaint, confirms that any loss Plaintiff or Surge Capital may have incurred is attributable to Mr. Seaman's unlawful scheme, not to any actions by Defendants.

A recent, published civil RICO decision from the District of Delaware is directly on point, illustrates the deficiencies in the Complaint, and confirms that Plaintiff has not stated a cause of action.  In *Singh v. Illusory Systems, Inc.*, the plaintiffs alleged that unlicensed money transmissions and a lack of regulatory compliance facilitated a cryptocurrency hack that caused their financial losses.  727 F. Supp. 3d at 508-09.  The court dismissed the civil RICO claims, finding that the harm was too remote because the injury arose from a coder's mistake and subsequent criminal actions by third parties.  *Id.* at 510.  The court emphasized that speculative assertions about what additional regulatory oversight might have prevented failed to establish a direct causal link between the alleged violations and the plaintiffs' harm.  *Id.* at 509.  As in *Singh*, where the alleged harm resulted from independent third-party actions, Plaintiff here fails to link Defendants' conduct to any alleged injury.  "It is not any Defendant's conduct that led directly to the Plaintiff's injuries."  *Virtus Pharms., LLC v. Woodfield Distribution, LLC*, No. 8:21-CV-02427-WFJ-SPF, 2024 WL 4235895, at *7 (M.D. Fla. Sept. 19, 2024).  Rather, it is ***Mr. Seaman's*** intervening misconduct that caused any injury to Plaintiff's interests.  *See id.* (holding that "intervening, intermediary causes of harm . . . sever[ed] the direct relationship between racketeering activities and a plaintiff's harm").

RICO requires more than a mere but-for causal relationship; it demands a direct connection between the predicate acts and the alleged injury.  *See Anza*, 547 U.S. at 456–57.  This does not, and cannot, exist here.  Mr. Seaman's fraud described by the SEC was an elaborate and widespread scheme where Mr. Seaman alone was the mastermind.[5]  Any purported unlicensed money transmission by Defendants was not integral to Mr. Seaman's illegal activity or a legally

---

[5] This alone also exemplifies why Plaintiff lacks standing.  In a similar case involving investment fraud, the Eleventh Circuit affirmed this Court and held that the court-appointed receiver lacked standing because "the Receivership Entities were controlled exclusively by persons engaging in and benefitting from" the fraud, and so "the Receivership Entities were not injured by that scheme." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1308 (11th Cir. 2020).  Courts also have applied the doctrine of *in pari delicto* in similar contexts.  *See Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1156 (11th Cir. 2006) (applying *in pari delicto* to bar RICO claim by bankruptcy trustee); *Kelley v. BMO Harris Bank, N.A.*, 115 F.4th 901, 906–07 (8th Cir. 2024) (applying *in pari delicto* to bar recovery by court-appointed receiver in Ponzi scheme)."

cognizable cause of Plaintiff's alleged injuries. Plaintiff instead relies on speculation and conjecture, asking the Court to connect dots where none exists. Such attenuated theories of causation cannot satisfy RICO's proximate cause requirement. Seaman's fraudulent conduct, as confirmed by the SEC action, is the direct and intervening cause of any harm. Without a direct connection between Defendants' alleged conduct and Plaintiff's claimed injuries, the RICO claim fails as a matter of law.

Plaintiff's attempt to plead proximate cause as to DPayments also fails for a separate reason, because its alleged participation in the purported RICO enterprise took place only **after** the transfers at issue were completed. DPayments was not even formed until well after the SEC action was filed and the court froze Surge Capital's assets. *Compare* Ex. A (SEC Complaint) (filed July 27, 2023) and Ex. E (Asset Freeze Order, granted Oct. 27, 2023) *with* Ex. D (DPayments LLC Cert. of Formation).

Plaintiff's theory of causation entirely rests on speculation and conjecture, lacking the factual support necessary to satisfy RICO's proximate cause requirement. The Court may not entertain claims that require leaps of logic to manufacture liability where the clear cause of harm is an independent actor's misconduct. Without a direct connection between Defendants' actions and Plaintiff's injuries, Plaintiff's Complaint fails as a matter of law and should be dismissed. *See Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 712-13 (11th Cir. 2014) (affirming dismissal where the alleged harm was too attenuated to sustain a RICO claim).

### C. There Is No Distinct RICO Enterprise, Rendering Plaintiff's Claims Legally Deficient.

Plaintiff's Complaint fails as a matter of law to allege a distinct RICO enterprise, as required to sustain a civil RICO claim. At its core, Plaintiff's theory is an impermissible attempt to transform routine corporate activities into a RICO enterprise—contrary to settled law in the Eleventh Circuit. The purported enterprise consists of Deel, its corporate affiliate DPayments, and an employee, Mr. Berger. It is black-letter law that "plaintiffs may not plead the existence of a RICO enterprise between a corporate defendant and its agents or employees acting within the scope of their roles for the corporation because a corporation necessarily acts through its agents and employees." *Ray*, 836 F.3d at 1357; *Danny Lynn*, 2011 WL 2893629, at *3 (dismissing RICO claim where the alleged enterprise consisted of a corporation and its subsidiaries and agents). Plaintiff's Complaint fails because it does not allege a group of entities or individuals that are distinct from Deel.

Plaintiff's allegations confirm that the purported enterprise is nothing more than Deel and its affiliates acting within a unified and legitimate corporate structure. Plaintiff explicitly describes DPayments as an "affiliated party of Deel," Compl. ¶ 8, and Berger as an "affiliated party, employee and/or contractor of Deel" and an "authorized person and affiliated party for, and agent of, DPayments," *id.* ¶ 9. Further, Plaintiff alleges that Deel is the "alter ego and control person" of both DPayments and Berger. *Id.* ¶ 12. These allegations are fatal to Plaintiff's RICO claim because they describe a unified corporate structure, not a distinct RICO enterprise. *See Danny Lynn*, 2011 WL 2893629, at *3("[A] corporation and its associated subsidiaries, employees and agents do not form an enterprise that satisfies the distinctness requirement under RICO.").

Where all defendants—whether corporate entities or natural persons—act as part of a unified business operation, there is no distinct RICO enterprise. But that is all Plaintiff alleges here. In *Viridis Corp. v. TCA Global Credit Master Fund, LP*, the court dismissed a RICO claim where the alleged enterprise was indistinguishable from the defendant corporation's own internal operations. 155 F. Supp. 3d 1344, 1359–60 (S.D. Fla. 2015). The court found that the corporation and its employees were acting within a unified business structure. *Id.* at 1360. *See also Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1367 (M.D. Fla. 2005) (allegation that a defendant "associated with either its own employees or its own subsidiaries . . . fails to satisfy the distinctness requirement"); *DJ Lincoln Enterprises, Inc. v. Google, LLC*, No. 2:20-CV-14159, 2021 WL 3079855, at *1 (S.D. Fla. July 21, 2021), *aff'd*, No. 21-12894, 2022 WL 203365 (11th Cir. Jan. 24, 2022) (dismissing RICO claim where enterprise was comprised of related corporate entities and individuals acting within their roles for the corporation). The same principle applies here, where Plaintiff has not alleged a distinct enterprise beyond Deel's internal structure.[6]

---

[6] In *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001), the Supreme Court held that, where the defendant is a natural person, he is distinct from a closely held corporation of which he is the president and sole shareholder. That case did not address the "'quite different' issue . . . where the defendant 'person' is a corporation and is alleged to have engaged in an enterprise with its officers, employees, and agents," because "a corporation necessarily acts through its agents and employees." *Ray*, 836 F.3d at 1356–57 (11th Cir. 2016) (quoting *Cedric Kushner*, 533 U.S. at 164)). Here, Plaintiff has explicitly alleged that the corporation (Deel) has acted through agents and employees. *See* Compl. ¶ 9 (alleging Berger is an "agent of" DPayments and "affiliated party, employee, and/or contractor" of Deel); *id.* ¶ 12 (alleging Deel is "the alter ego and control person of DPayments"). Nor is there an individual sole shareholder involved here.

For similar reasons, Plaintiff's allegations also fail to establish a common purpose necessary to plead the existence of a RICO enterprise.  A RICO enterprise must pursue a shared and unlawful objective that goes beyond ordinary business interests, such as making a profit.  *See Cisneros*, 972 F.3d at 1211 ("An abstract common purpose, such as a generally shared interest in making money, will not suffice.").  There is no such plausible allegation here.  In *Ray*, the court dismissed RICO claims where the alleged purpose of the enterprise was profit generation through a scheme that purportedly involved the misrepresentation of ancillary travel fees as government taxes.  836 F.3d at 1352–53.  The court found those allegations to be conclusory and noted that the common purpose of making money "is wholly insufficient to establish an association-in-fact enterprise."  *Id.* at 1352 n.3.

Plaintiff's allegations suffer from the same deficiency because the Complaint alleges that the enterprise's purpose was to "maximize Deel's revenues and market share" by facilitating money transfers without meeting licensing or compliance requirements.  *See e.g.*, Compl. ¶ 152. That allegation is conclusory and not plausible, particularly given the rapid pace of DPayments' licensures since its inception.  *See* NMLS Report (Ex. F); *see also Ray*, 836 F.3d at 1352 (holding the court "cannot accept purely conclusory allegations" regarding common purpose); *Pinares v. United Techs. Corp.*, No. 10-80883-CIV, 2018 WL 11422987, at *7–9 (S.D. Fla. Feb. 13, 2018) (dismissing RICO complaint that left "a plethora of unanswered questions regarding" the enterprise's purpose) (quoting *United States v. Int'l Longshoremen's Ass'n*, 518 F. Supp. 2d 422, 475 (E.D.N.Y. 2007)).  And what is left—a common purpose to maximize revenue and market share—is insufficient as a matter of law because it aligns with Deel's overall and lawful business objective in the ordinary course.

### D.  There Is No Plausible Pattern of Racketeering Activity.

Plaintiff also fails to allege a plausible pattern of racketeering activity, a foundational element of any civil RICO claim.  To sustain a RICO claim, Plaintiff must establish "at least two acts of racketeering activity—known as 'predicate acts'" that form a continuous pattern of unlawful conduct.  *Cont'l 332 Fund, LLC v. Albertelli*, No. 20-13133, 2021 WL 3184586, at *3 (11th Cir. July 28, 2021).  Each alleged predicate act must meet the threshold of being independently indictable.  *See Cisneros*, 972 F.3d at 1215.

Plaintiff's allegations here fall far short.  Plaintiff concedes she lacks "[m]any of the precise dates and details of the Deel RICO Enterprise."  Compl. ¶ 158.  This admission alone underscores

the speculative nature of the claims.  The alleged predicate acts—money laundering, violations of the Bank Secrecy Act, and unlicensed money transmissions—are insufficiently pled and fail to meet the rigorous requirements of RICO.

### i.   Plaintiff Fails To Plead Money Laundering as a Predicate Act.

Plaintiff's money laundering allegations lack the specificity required to sustain a civil RICO claim.  Under 18 U.S.C. § 1956(a)(1)(A)(i), Plaintiff must allege that Defendants knowingly conducted financial transactions with proceeds derived from unlawful activity and with the intent to promote further illegal conduct.  *See Birmingham v. Doe*, No. 21-CV-23472-SCOLA/GOODMAN, 2022 WL 18134962, at *13 (S.D. Fla. Dec. 6, 2022).  Critically, Plaintiffs must also allege that Defendants knew the proceeds were from some form of unlawful activity.[7] *Id.* at *14. The allegations must identify the source of the illicit funds, the timing of the transactions, and the purpose of the laundering.  *Id.* at *13.

Plaintiff fails to meet this standard.  The Complaint asserts broadly that Defendants used the "Deel Card" and "Deel Wallet" to launder payments but provides no information about the source, amount, or timing of the alleged transactions.  Compl. ¶ 55(a)(i)(3).  The Complaint's failure to allege that Mr. Seaman or any other third party used these tools to process illicit payments is fatal to Plaintiff's claim.

Courts have dismissed routinely similar claims for lack of specificity.  In *Omnipol, A.S. v. Worrell*, the court dismissed RICO claims based on allegations of money laundering that were "bald accusations" unsupported by details about how defendants knew of the alleged unlawful funds, the dates of the transactions, or their purpose.  421 F. Supp. 3d 1321, 1352–53 (M.D. Fla. 2019).  Likewise, in *Ellis v. Warner*, the court dismissed money laundering claims because the plaintiff failed to identify proceeds from any "specified unlawful activity" or explain how the transactions met the statutory elements of money laundering.  No. 15-10134-CIV, 2017 WL 634287, at *9 (S.D. Fla. Feb. 16, 2017).  Plaintiff's allegations mirror the deficiencies rejected in *Omnipol* and *Ellis*.  Without specific allegations confirming that Defendants knowingly laundered

---

[7] Plaintiff also makes conclusory reference to a predicate act under 18 U.S.C. § 1957.  Compl. ¶ 132.  Like Section 1956, to violate Section 1957, a defendant must "know that the property is criminally derived."  *See Birmingham*, 2022 WL 18134962, at *16 (requiring defendant know property involved in monetary transaction was criminally derived and dismissing RICO claims for same reason as under § 1956).

proceeds of unlawful activity, the claim cannot stand because "conclusory statements" are insufficient to plead money laundering as a RICO predicate. *See Entretelas Americanas S.A. v. Soler*, No. 19 Civ. 03658 (LAK) (RWL), 2020 WL 9815186 (S.D.N.Y. Feb. 3, 2020), at *10.

> ii. **Plaintiff's Allegations of Violations of the Bank Secrecy Act Do Not Constitute Predicate Acts.**

Plaintiff's allegations under the Bank Secrecy Act ("BSA") fail to establish RICO predicate acts. Plaintiff alleges Defendants violated 31 U.S.C. § 5318(h) by having an inadequate Anti-Money Laundering Program. How, exactly, Plaintiff does not say. Section 5318(h) requires financial institutions to (1) develop internal policies, procedures, and controls, (2) designate a compliance officer, (3) run an ongoing employee training program, and (4) institute an independent audit function to test programs. The Complaint offers no allegations to make this anything close to "indictable" act, meaning it is not a sufficient RICO predicate.

Even if it were, the alleged violation of the Bank Secrecy Act alone is not enough to establish Defendants "participated in" the alleged criminal enterprise. For a reporting-related failure to constitute a RICO predicate act, Plaintiff would need plausibly to allege that Defendants participated in or directed the affairs of a criminal enterprise through such violations. *See, e.g.*, *Heffernan v. HSBC Bank USA*, No. 1:99CV07981, 2001 WL 803719, at *5 (E.D.N.Y. Mar. 29, 2001). Plaintiff does not allege anything close to that here. In *Heffernan*, plaintiffs alleged that the defendant bank failed to investigate or report suspicious deposits and withdrawals it knew to be proceeds of fraud. *Id*. The court dismissed the RICO claim, reasoning that failure to report activity does not equate to participating in or directing a criminal enterprise. *Id.* at *6. The defendant was merely a passive conduit, insufficient to satisfy RICO's requirement of active involvement in the operation of an enterprise. *See id.*

Plaintiff's allegations here are equally deficient. The Complaint asserts that Defendants failed to "maintain an effective" supervisory program but provides no evidence that such failures were integral to a criminal enterprise. Compl. ¶ 157(b). At most, the allegations suggest compliance deficiencies, which courts have consistently held are not sufficient to state a RICO claim. *See Heffernan*, 2001 WL 803719, at *6. Plaintiff's conclusory allegations fail to establish that Defendants conducted or participated in the affairs of any criminal enterprise under 18 U.S.C. § 1962(c). Without more, these claims cannot survive, and the Court should grant this motion to dismiss.

### iii.   Plaintiff's Unlicensed Money Transmission Allegations Lack Specificity.

Plaintiff's allegations concerning unlicensed money transmission fail to meet the pleading standards required for a RICO predicate act, as they offer no detail whatsoever as to what state licenses Defendants purportedly lack for any particular transactions—much less transactions involving Surge Capital.  To establish a violation of 18 U.S.C. § 1960, Plaintiff must allege that Defendants knowingly operated a money transmitting business without the required state licenses, where the relevant state law both mandates licensure and criminalizes unlicensed transmission as a misdemeanor or felony.  *Pincus v. Speedpay, Inc.*, 161 F. Supp. 3d 1150, 1158 (S.D. Fla. 2015); § 1960(b)(1)(A).  Plaintiff's allegations fail to satisfy these elements, rendering this claim legally and factually deficient.

Plaintiff does not specify which state licenses Defendants allegedly lacked or when any unlicensed transmissions occurred.  The Complaint itself acknowledges that DPayments "has recently acquired money transmitter licenses in some states in its name."  Compl. ¶ 135.  Plaintiff provides no details about which states allegedly required licenses during the relevant time period, whether those licenses were lacking, or how such deficiencies constitute violations of state law punishable as misdemeanors or felonies.

Violations of § 1960 are not sufficiently pled as RICO predicates where plaintiffs fail to allege specific facts about licensing requirements and violations.  In *Redman v. Francis David Corp.*, the court found the § 1960 predicate had been insufficiently pled because it lacked sufficient detail to describe the purported violation.  No. 1:10CV2004, 2012 WL 4504484, at *7 (N.D. Ohio Sept. 30, 2012).  Similarly, in *BMA LLC v. HDR Glob. Trading Ltd.*, the court dismissed RICO claims where the underlying predicates included alleged § 1960 violations.  The plaintiffs' § 1960 allegation depended upon sufficiently alleging the defendants had engaged in market manipulation or fraudulent inducement.  No. 20-CV-03345-WHO, 2021 WL 4061698, at *11, 15 (N.D. Cal. Sept. 7, 2021).  The court found it more plausible the plaintiffs' alleged injuries were suffered as the result of third-party bad actors rather than the defendants' actions.  *Id.* at *11.  The plaintiffs' inability to allege specific instances of conduct, including unlicensed money transmission that would constitute a state-law felony or misdemeanor, proved fatal to their RICO claims; they were unable to connect any relevant facts to their alleged injuries.  *Id.* at *15. As in *Redman* and *BMA*, Plaintiff here fails to allege unlicensed money transmission at any meaningful level of detail,

including the specific state licenses Defendants were required to have, the timeframes of any unlicensed transmissions, or how lacking those licenses is connected to the Plaintiff's injuries.[8]

## II.   RECEIVER'S INABILITY TO IDENTIFY VIABLE CLAIMS WARRANTS DISMISSAL WITH PREJUDICE.

Plaintiff's role as Receiver imposes an obligation to exercise due diligence in identifying and asserting claims. *See Hunt v. Am. Bank & Tr. Co. of Baton Rouge*, 606 F. Supp. 1348, 1357 (M.D. La. 1985); *see also Damian v. Meftah*, No. 22-CV-02573-JCS, 2022 WL 17835612, at *13 (N.D. Cal. Dec. 21, 2022) (charging the same receiver *in this very matter* with knowledge of facts such as bank records in her possession in considering statute of limitations defense). Plaintiff's inability to identify even basic facts supporting her claims—despite having access to Surge Capital's records for more than a year since her October 27, 2023 appointment—demonstrates the futility of further amendment. *See Omnipol*, 421 F. Supp. 3d at 1354 ("Dismissal with prejudice may still be appropriate, however, if granting leave to amend would be futile.") (quoting *Hilderbrandt v. Butts*, 550 F. App'x 697, 699 (11th Cir. 2013)). Given Plaintiff's failure to allege a viable claim, further amendment would serve no purpose. Dismissal with prejudice is warranted to prevent the unnecessary prolongation of baseless litigation.

## III.   IF THE COURT DOES NOT DISMISS, THE COURT SHOULD TRANSFER THE CASE TO THE MIDDLE DISTRICT OF FLORIDA.

If the Court does not dismiss this action, it should transfer the case to the Middle District of Florida, where two of the Defendants are located and the underlying events allegedly occurred. Under 28 U.S.C. § 1404(a), a federal court may transfer a civil action to another district where the case could have been brought, provided the transfer serves the convenience of the parties and witnesses and promotes the interests of justice. Although a plaintiff's choice of forum is given deference, this deference diminishes when "the operative facts underlying the cause of action did

---

[8] Plaintiff's only specific licensure allegation involves Minnesota Stat. § 53B.36, which did not impose criminal penalties for violations before July 1, 2023. This omission is fatal to Plaintiff's claim because a RICO predicate act must allege conduct that is independently indictable. *See Cisneros*, 972 F.3d at 1215–16. Before the statutory amendments effective July 1, 2023, Minnesota's Money Transmitter Act relied exclusively on administrative enforcement mechanisms. Historically, Section 53B.24 in conjunction with Section 45.027, outlined penalties for violations of the Minnesota Money Transmitter Act in the form of civil fines, cease-and-desist orders, and license suspensions or revocations.

not occur within the [chosen] forum." *Windmere Corp. v. Remington Prods., Inc.*, 617 F. Supp. 8, 10 (S.D. Fla. 1985).

In determining whether to transfer venue, courts evaluate whether: (1) an adequate alternative forum exists, (2) private interests favor transfer, and (3) public interests weigh in favor of transfer. *Trafalgar Capital Specialized Inv. Fund v. Hartman*, 878 F. Supp. 2d 1274, 1282 (S.D. Fla. 2012). An "adequate alternative forum" exists if jurisdiction and venue are proper and the parties are amenable to service of process. *Id*. at 1285. Private interest considerations include the convenience of the parties, the convenience of witnesses, the relative ease of access to sources of proof, and the availability of service of process to compel witnesses. *Thermal Technologies, Inc. v. Dade Service Corp.*, 282 F. Supp.2d 1373, 1376–77 (S.D. Fla. 2003). Public interest factors include the forum's interest in adjudicating the dispute. *Trafalgar Cap.*, 878 F. Supp. 2d at 1282.[9]

All of relevant factors weigh in favor of a transfer. ***First***, the Middle District of Florida is an adequate alternative forum. Jurisdiction is proper there because Deel has nationwide contacts under 18 U.S.C. § 1965(b), DPayments has its principal place of business in the district, and Mr. Berger is domiciled there. Venue is also proper under 18 U.S.C. § 1391(b)(1), and all parties are amenable to service of process in the Middle District of Florida.

***Second***, private interests also weigh in favor of transfer because the parties are located in the Middle District of Florida, and the events underlying the Complaint allegedly occurred there. Surge Capital is headquartered in the Middle District of Florida. SEC Compl. ¶ 16. DPayments also is headquartered there, and Mr. Berger is domiciled in the same district. Compl. ¶¶ 8–9. Nearly all relevant events in the underlying SEC action occurred there. *See* SEC Compl. ¶¶ 1, 20–35. The SEC filed its action in this district solely based on Mr. Seaman's consent to venue. *Id.* ¶ 18. That agreement does not bind Defendants and should not warrant keeping the action in the Southern District of Florida given all the factors that point toward transfer. Furthermore, Plaintiff cannot argue inconvenience in litigating in the Middle District of Florida, as she has filed a separate $1.2 million class action in the Middle District, which remains pending there. *See Damian v. Staub*, 2:24-CV-00997 (M.D. Fla. 2024).

---

[9] The remaining public interest factors—"the forum's familiarity with the governing law," "the burden of jury duty on the forum's community," and "relevant docket congestion," *Trafalgar Cap.*, 878 F. Supp. 2d at 1282—are neutral.

***Finally***, the public interest weighs in favor of transfer.  The Middle District of Florida has a stronger connection to this case, as nearly all of the underlying events occurred there, and the parties and key witnesses are located there.

Because an adequate alternative forum is available, and the private and public interest factors strongly support transfer, this Court, if it does not dismiss the Complaint, should transfer the case to the Middle District of Florida.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiff's single-count Complaint in its entirety and with prejudice.  Defendants also request such other and further relief as the Court deems just and proper.

<u>**REQUEST FOR HEARING**</u>

Defendants respectfully request that this Court grant their request for a hearing on this motion.  A hearing is warranted to address the multiple legal issues and deficiencies in Plaintiff's Complaint, including questions of standing, causation, and the failure adequately to plead RICO predicate acts.  Oral argument will assist the Court in evaluating these issues.

Defendants estimate that 30 minutes will be sufficient to present their arguments and respond to any questions the Court may have.

DATED:        January 23, 2025

PAUL HASTINGS LLP


By: /s/ Bradley J. Bondi
     Bradley J. Bondi (FL 0162396)


By: /s/ Ronald K. Anguas, Jr.
     Ronald K. Anguas, Jr. (*Pro Hac Vice*)

     2050 M Street NW
     Washington, DC 20036
     Phone: (202) 551-1700
     Facsimile: (202) 551-0201
     bradbondi@paulhastings.com
     ronaldanguas@paulhastings.com


     SHEPPARD MULLIN RICHTER &
     HAMPTON, LLP

     Thomas V. Panoff (*pro hac vice*
     forthcoming)
     321 North Clark Street, 32nd Floor
     Chicago, IL 60654
     Phone: (312) 499-6328
     tpanoff@sheppardmullin.com

     Camille Vasquez (*pro hac vice*
     forthcoming)
     650 Town Center Drive, 10th Floor
     Costa Mesa, CA 92626
     Phone: (714) 424-8211
     cvasquez@sheppardmullin.com

DAVE ARONBERG LAW, P.A.


By:   /s/ David A. Aronberg
      David A. Aronberg (FL 090565)

      515 N. Flagler Drive, Ste. 402
      West Palm Beach, FL 33401
      Phone: (561) 765-5555
      dave@davearonberglaw.com

      **_ATTORNEYS FOR DEFENDANTS_**