UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
1:25-CV-20017-MARTINEZ/SANCHEZ

| | | |
|---|---|---|
| MELANIE DAMIAN, in her capacity as a court-appointed Receiver, on behalf of Surge Capital Ventures, LLC and others similarly situated, | | |
| Plaintiff, | | |
| vs. | | RICO CLASS ACTION JURY DEMANDED |
| DEEL INC., a Delaware corporation, DPayments LLC, a Delaware limited liability company, and Jeremy Berger, Individually, | | |
| Defendants. | | |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

Introduction ........................................................................................................ 1

Summary Of Argument ...................................................................................... 1

Background ......................................................................................................... 2

Legal Standard .................................................................................................... 3

Argument ............................................................................................................ 3

1.    ENTERPRISE.  The Plaintiff has plausibly alleged the existence of the Deel
RICO Enterprise required by 18 U.S.C. §§ 1962(a), (c) and (d). ............................ 5

a.    PURPOSE.  The Deel RICO Enterprise includes a group of persons associated
together for a common purpose. .............................................................................. 7

b.    RELATIONSHIPS.  The Deel RICO Enterprise involves insider and  outsider
relationships among its associates. .......................................................................... 8

c.    LONGEVITY.  The longevity of the Deel RICO Enterprise has been (and
remains) sufficient to permit its associates to pursue its purpose. .......................... 10

2.    PATTERN.  The Deel RICO Enterprise is built on a continuous "pattern of
racketeering activity" (predicate acts). .................................................................... 11

a.    The Plaintiff plausibly alleges that Defendants have operated an unlicensed
money transmitter business in violation of specific federal and state laws that
constitutes a "pattern of racketeering activity." ...................................................... 11

b.    The Plaintiff plausibly alleges that Defendants have violated U.S. anti-money
laundering laws by operating their UMTB with no effective   BSA program
(including AML and KYC) with repeated violations evidencing a separate "pattern
of racketeering activity." ......................................................................................... 14

3.    CAUSATION.  Defendants caused injury to the Plaintiff's and the Class's
business and property, including through collection of unlawful fees. ..................... 16

4.    INJURY.  Defendants' conduct and collection of fees in operating its UMTB
caused injury to the Plaintiff's and the Class' business or property. ....................... 18

a.    By charging fees in their UMTB, Defendants have caused injury to the
Plaintiff's and the Class's property. ........................................................................ 18

b.    By charging fees in their UMTB and failing to comply with BSA
requirements of an effective BSA program, Defendants have caused injury to the
Plaintiff's and the Class's business. ........................................................................ 19

Plaintiff Has Standing ......................................................................................... 19

Motion To Change Venue ................................................................................... 20

Conclusion ........................................................................................................... 20

i

## TABLE OF AUTHORITIES

**Cases**

*Anza v. Ideal Steel Supply Corp.,*
   547 U.S. 451 (2006) ........................................................................................ 20

*Ashcroft v. Iqbal,*
   556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ................................... 3

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ................................... 3

*Boyle v. United States,*
   556 U.S. 938 (2009) ...................................................................................... 3, 6

*Burnet v. Clark,*
   287 U.S. 410, 53 S.Ct. 207, 77 L.Ed. 397 (1932) ........................................... 9

*California Pac. Bank v. Fed. Deposit Ins. Corp.,*
   885 F.3d 560 (9th Cir. 2018) ..................................................................... 15, 16

*Cedric Kushner Promotions, Ltd. v. King,*
   533 U.S. 158 (2001) ........................................................................ 7, 9, 18, 19

*Cisneros v. Petland, Inc.,*
   972 F.3d 1204 (11th Cir. 2020) ...................................................................... 5

*Commodities Futures Trading Comm'n v. Traders Glob. Group Inc.,*
   CV 23-11808 (ZNQ)(TJB), 2024 WL 4910456 (D.N.J. Jan. 10, 2024) ........... 5

*Commodity Futures Trading Comm'n v. Traders Glob. Group Inc.,*
   CV 23-11808 (ZNQ) (TJB), 2023 WL 7545316 (D.N.J. Nov. 14, 2023) ..... 5, 22

*GSW, Inc. v. Long Cnty., Ga.,*
   999 F.2d 1508 (11th Cir. 1993) ...................................................................... 6

*H.J. Inc. v. Nw. Bell Tel. Co.,*
   492 U.S. 229 (1989) ...................................................................................... 10

*Ironworkers Local Union 68 v. AstraZeneca Pharm., LP,*
   634 F.3d 1352 (11th Cir. 2011) ...................................................................... 3

*Knights v. C. R. Bard Inc.,*
   CV 19-11911-FDS, 20 WL 6142437 (D. Mass. Sept. 20, 2023) ..................... 17

*Morrison v. Amway Corp.,*
   323 F.3d 920 (11th Cir. 2003) ........................................................................ 4

*Nat'l Org. for Women, Inc. v. Scheidler,*
   510 U.S. 249 (1994) .................................................................................. 2, 3, 8

*Nicklaw v. CitiMortgage, Inc.,*
   855 F.3d 1265 (11th Cir. 2017) ..................................................................... 20

*Pincus v. Speedpay, Inc.,*
   161 F. Supp. 3d 1150 (S.D. Fla. 2015) .................................................... passim

*Ray v. Spirit Airlines, Inc.,*
   836 F.3d 1340 (11th Cir. 2016) .............................................................. 3, 5, 20

*Reves v. Ernst & Young,*
   507 U.S. 170 (1993) ........................................................................................ 9

*Jackson v. BellSouth Telecommunications,*
   372 F.3d 1250 (11th Cir. 2004) .................................................................. 7, 10

*Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC,*
   904 F.3d 1197 (11th Cir. 2018) .................................................................... 6, 9

*U.S. v. Flashdot Ltd. (dba KuCoin)*,
   No. 1:24-cr-00168 (S.D.N.Y. 2025) ...................................................... 13, 14, 22
*United States v. Bah*,
   574 F.3d 106 (2d Cir.2009) ...................................................................... 12
*United States v. Bestfoods*,
   524 U.S. 51, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998) ...................................... 9
*United States v. Dimitrov*,
   546 F.3d 409 (7th Cir. 2008) ..................................................................... 4
*United States v. Elfgeeh*,
   515 F.3d 100 (2d Cir. 2008) ...................................................................... 4
*United States v. Faiella*,
   39 F. Supp. 3d 544 (S.D.N.Y. 2014) .................................................. 12, 13, 18
*United States v. Mazza-Alaluf*,
   621 F.3d 205 (2d Cir. 2010) .................................................................. 4, 12
*United States v. Turkette*,
   452 U.S. 576 (1981) ................................................................................ 6
*Woldeab v. Dekalb Cnty. Bd. of Educ.*,
   885 F.3d 1289 (11th Cir. 2018) .................................................................. 5

**Statutes**

18 U.S.C. § 1956 ............................................................................... 2, 12
18 U.S.C. § 1957 .................................................................................... 2
18 U.S.C. § 1960 ............................................................................... passim
18 U.S.C. § 1961 ................................................................................ 1, 11
18 U.S.C. § 1962 ................................................................................. 2, 6
18 U.S.C. § 1964 ............................................................................ 1, 18, 19
205 Ill. Comp. Stat. 657/10 ..................................................................... 12
28 U.S.C. § 1404 ................................................................................... 20
31 U.S.C. § 3729 ................................................................................... 20
31 U.S.C. § 5318 ................................................................................... 15
Cal.Bus. & Prof.Code § 17200 ................................................................... 2
Fla. Stat. § 560.103 ............................................................................... 18
Fla. Stat. § 560.204 ............................................................................... 18

**Other Authorities**

1 W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 7, 14 (rev. ed.1999) ...... 9
H.R.Rep. No. 107–250(I) (2001) ................................................................ 12
S. Rep. 101-460, 1990 WL 201710 (1990) ...................................................... 13

**Rules**

Fed. R. Civ. P. 10 ................................................................................... 6
Fed. R. Civ. P. 12 ................................................................................ 1, 4
Fed. R. Civ. P. 8 ................................................................................... 17

**Regulations**

12 C.F.R. § 326.8 .................................................................................. 15

## INTRODUCTION

In her Complaint,[1] the Plaintiff alleges that Defendants participated in the Deel RICO Enterprise and, along with outsiders, acted and conspired for over five years to operate (and continue to operate) an unlicensed money transmitting business ("UMTB") in violation of 18 U.S.C. § 1960.  DKT #1.  A violation of Section 1960 is a predicate act under RICO (18 U.S.C. § 1961(1)(E)) for which there is strict liability and 18 U.S.C. § 1964(c) provides for a RICO civil private cause of action for damages.

Further, the Complaint alleges that the Deel RICO Enterprise has caused (and continues to cause) direct injury to the Plaintiff and the Class's property and business including money paid directly to Deel for what Deel represented was a legally compliant and licensed money transmitter service.  That service was not licensed, however, and Section 1960 imposes strict criminal liability for which the Plaintiff seeks redress in the form of damages and injunctive relief as allowed in RICO.

As part of America's war on terror, Congress amended Section 1960 to remove any requirement that a defendant have knowledge that its UMTB is illegal and created strict liability for any violation.  As part of Defendants' UMTB, they were required to be (and represented they were) legally compliant with KYC, AML, OFAC and other BSA program requirements while knowingly operating their UMTB.  In fact, Defendants had no licenses for their UMTB and simultaneously failed to implement an effective BSA program (including AML, KYC and OFAC processes).  That BSA failure is a second predicate act under Section 1960 and part of a pattern of activity engaged in by Defendants and their outside accomplices.

In response to the Complaint, the Defendants have jointly filed the Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion").  In the Motion, Defendants rely on improper proffers of fact and asks this Court to take judicial notice of such "evidence."  The Plaintiff now files this opposition to the Motion.

## SUMMARY OF ARGUMENT

Impermissibly going beyond the four corners of the Complaint, the Defendants ask this Court to accept their unsupported proffers of fact as true, take judicial notice of "evidence" and

---

[1]  Defined terms herein shall have the same meaning as in the Complaint.

dismiss the Complaint because (1) a phantom "major investor" is behind it,[2] (2) Deel, Inc. has a "stellar reputation," and (3) Brent Seaman's criminal conduct protects Defendants from *their* criminal acts. (Motion at 1). The Plaintiff has alleged none of these things and, as admitted by Defendants, Surge Capital is an innocent victim of Seaman's criminal conduct and named in the SEC matter only as a relief defendant. (Motion at 1, 2).

Moreover, Defendants admit their crimes by explaining how they conspired in 2023 to seek forgiveness for their prior acts of operating an UMTB since they had not sought permission. (Motion at 3 and Ex. F) just as Binance had done when charged with similar crimes. (Complaint at ¶ 102).

In addition, the Plaintiff has alleged that Defendants failed to implement an effective BSA program as required by law. This failure is also "racketeering activity" (under §§ 1960 and 1961(1)(E)) and an enterprise (under 18 U.S.C. §§ 1962(a) and (c)) for which Defendants are liable under 18 U.S.C. §§ 1956, 1957, 1960 and 1964(c).

The Plaintiff has therefore sufficiently alleged a RICO claim against Defendants and, once the Motion is stripped of its not-in-the-record arguments, unsupported factual assertions and sanctions bravado, there is little left. Accordingly, the Motion must be denied.

## BACKGROUND

The background of Plaintiff's claims is alleged in detail in her Complaint and will not be repeated. Defendants largely ignore those claims, however, preferring their own mistaken proffer of an entirely different background relying solely on claims in the SEC Complaint that are not at issue here. (Motion at 3-5 (BACKGROUND)). Accordingly, Defendants' entire BACKGROUND section should be disregarded.

---

[2] Defendants do not say why a competitor's "major investor['s]" alleged effort to force them to follow the law may affect their liability or, indeed, how it may be relevant. To be sure, Deel's competitors likely have very strong claims against Defendants as unlicensed actors in regulated industries critical to national and international commerce and defense (*e.g.*, money transmission, payments, insurance, PEO, lending), but the Plaintiff asserts no such claims here. *See, e.g.*, California's Unfair Competition Law (UCL) Cal.Bus. & Prof.Code § 17200 (operating without required licenses constitutes an unlawful and fraudulent business practice); *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 260 (1994)("… predicate acts … may not benefit the protesters financially but still may drain money from the economy by harming businesses such as … in this case.").

## LEGAL STANDARD

In evaluating the sufficiency of the Complaint, "the RICO statute provides that its terms are to be liberally construed to effectuate its remedial purposes." *Boyle v. United States*, 556 U.S. 938, 944 (2009). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *National Organization for Women, Inc.*, 510 U.S. at 256 (reversing the circuit court's affirmance of the district court's Rule 12(b)(6) dismissal of RICO claims). More generally, the Eleventh Circuit has held as follows:

> We accept, as we must at this stage, the allegations in the complaint as true and construe them in the light most favorable to the plaintiffs. <u>Ironworkers Local Union 68 v. AstraZeneca Pharm., LP</u>, 634 F.3d 1352, 1359 (11th Cir. 2011). To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).
>
> *Ray v. Spirit Airlines, Inc.,* 836 F.3d 1340, 1347–48 (11th Cir. 2016).

## ARGUMENT

> "Binance became the world's largest cryptocurrency exchange in part because of the crimes it committed – now it is paying one of the largest corporate penalties in U.S. history," ….."The message here should be clear: using new technology to break the law does not make you a disruptor, it makes you a criminal." [3]

Binance's crimes mirrored those of Defendants: operating an UMTB and engaging in related BSA money laundering violations.[4] Like Binance, Defendants have used "new technology to break the law" and, while pretending to be disruptors, they are merely criminals.

Recently, the Seventh Circuit Court of Appeals explained Congress' purpose in creating such expansive liability for UMTB and laundering crimes:

> Congress enacted § 1960(a) in 1992 in response to concerns that nonbank financial institutions (*money transmitters*, check cashers, and foreign exchange dealers) were

---

[3] *U.S.A. v. Binance Holdings Limited*, Case No. 2:23-CR-00178 (W.D. Wash. 2023), as summarized by the D.O.J. in  <u>https://www.justice.gov/opa/pr/binance-and-ceo-plead-guilty-federal-charges-4b-resolution</u>

[4] A copy of the charging information in *Binance Holdings* is attached as Exhibit A.

increasingly being used to transfer the proceeds of illegal activity. … As part of the Patriot Act, Congress amended § 1960 … to make it easier to prosecute those responsible for funneling money to terrorism. … [and] removed the scienter requirement of the former version, making § 1960 a "general intent crime for which a defendant is liable if he knowingly operates a money transmitting business."

*United States v. Dimitrov*, 546 F.3d 409, 413 (7th Cir. 2008)(emphasis added).[5]

Oddly, Defendants rely on *Pincus v. Speedpay, Inc.*, 161 F. Supp. 3d 1150, 1158 (S.D. Fla. 2015) in support of their pleading argument, but in that case, this Court *denied* a motion to dismiss a RICO claim arising from the use of a credit card. Defendants also rely on two unreported opinions from other states, one involving debt collection and another commodities fraud, but the plaintiffs did not allege they had been customers of an UMTB or had paid UMTB fees of any kind. (Motion at 15). Thus, neither case is controlling, persuasive or relevant and, because the Complaint satisfies pleading requirements, the Motion should be denied.[6]

### PLAINTIFF ALLEGES THE ELEMENTS OF A RICO CLAIM

In order for the Plaintiff to state a RICO claim against Defendants, she must allege – not prove – these elements:[7]

---

[5] The Second Circuit is in accord: "[I]n order to convict a defendant of owning or conducting, etc., a business in violation of § 1960(a) prior to October 2001, the government was required to prove that the defendant had "*know[ledge* that] the business [wa]s an *illegal* money transmitting business," *id.* (emphases added), *i.e.*, one that was "*intentionally operated without* an appropriate money transmitting license," *id.* § 1960(b)(1)(A) (emphasis added). Under § 1960(a) as amended, however, the government need prove only that the defendant had "know [ledge]" that the business was "an *unlicensed* money transmitting business," 18 U.S.C. § 1960(a) (as amended) (emphasis added). Accordingly, the government is no longer required to prove that he knew the money-transmitting business was 'illegal.'" *United States v. Elfgeeh*, 515 F.3d 100, 132 (2d Cir. 2008); *see, also*, *United States v. Mazza-Alaluf*, 621 F.3d 205 (2d Cir. 2010).

[6] To the extent that Defendants seek to circumvent the motion to dismiss standard by characterizing its Motion as a 12(b)(1) motion to dismiss, the Eleventh Circuit has cautioned that "the district court should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action.' *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). Such is the case here and, accordingly, "…the proper course of action for the district court to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Morrison*, 323 F.3d at 925 (citations and ellipses omitted).

[7] Coincidentally, these same allegations counter Defendants' claim (relying on sources far beyond the four corners of the Complaint) that Deel has a "stellar reputation." Motion at 1, 3. Discovery through this opened door will include evidence of (a) Deel's money transmission

A private plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff. See Ray, 836 F.3d at 1348.

*Cisneros v. Petland, Inc.,* 972 F.3d 1204, 1211 (11th Cir. 2020).

Defendants challenge the sufficiency of the Plaintiff's allegations regarding (1) the existence of an enterprise, (2) a pattern (3) causation and (4) injury. As shown below, because the Plaintiff has plausibly alleged each of these elements and the Motion should be denied. [8]

1. **ENTERPRISE. The Plaintiff has plausibly alleged the existence of the Deel RICO Enterprise required by 18 U.S.C. §§ 1962(a), (c) and (d).**

---

services for illegal proprietary trading frauds such as in the $350 million My Forex Fund enforcement action by the CFTC (copy attached as Ex. B (Complaint at ¶ 20 and Ex. A), *Commodity Futures Trading Comm'n v. Traders Glob. Group. Inc.,* CV 23-11808 (ZNQ) (TJB), 2023 WL 7545316, at *1 (D.N.J. Nov. 14, 2023), *opinion clarified sub nom. Commodities Futures Trading Comm'n v. Traders Glob. Group Inc.,* CV 23-11808 (ZNQ)(TJB), 2024 WL 4910456 (D.N.J. Jan. 10, 2024), (b) Congressional investigations regarding Deel's practice of misclassifying employees in order to deprive them of state and federal protections and benefits and to create more "contractors" to use Deel's unlicensed money transmission services (Complaint at ¶ 55.b., 55.c.), (c) Deel's reputation as the go-to payment processor for unlawful money transmission and payments without KYC "hassles" (Complaint at ¶¶ 51, 69, 74), (d) Deel's willingness to indemnify its customers from illegal employment conduct sending funds in violation of sanctions in Russia with its "Deel Shield" (Complaint at ¶ 75), (e) hiring unqualified BSA "compliance" personnel, including Anastasia Cavallini despite her responsibility for material BSA/AML/OFAC failures at Arival Bank, a Puerto Rico "crypto-bank" affiliated with Quaint Oaks Bank (member, Federal Reserve) (Complaint at ¶ 7), (f) Deel's pattern of partnering with Russian banks and financial institutions, including T-Bank, a bank on the federal government's OFAC SDN sanction list (Complaint at ¶¶ 59, 62, 64-72, 81), and (g) Deel's admission in the Motion Defendants' activities require licenses not applied for (much less obtained) until 2024 (Motion at 3), and then in the misleading name of DPayments (contrary to the assertion in the Motion (*id.*), Deel holds no license "through" DPayments).

[8] In the event the Court grants the motion, the Plaintiff requests leave to amend her Complaint regarding RICO and add additional claims; such leave should be freely granted. *See*, *Woldeab v. Dekalb Cnty. Bd. of Educ.*, 885 F.3d 1289, 1291 (11th Cir. 2018).

In the Motion, Defendants improperly argue that the Court should go outside the Complaint,[9] admit evidence, engage in an analysis of Defendants' untested statements regarding their "unitary structure," and conclude that the Complaint must be dismissed because it fails to plausibly allege the existence of an enterprise under 18 U.S.C. § 1962(c).  (Motion at 1, 10-12). Although the Plaintiff need only *allege* the existence of the Deel RICO Enterprise, the bar even for proof is low.  In considering and rejecting the same argument, the Supreme Court (in confirming a RICO conviction) has held that even an inference is sufficient:

> The [district court] instructions adequately told the jury that the enterprise needed to have the structural attributes that may be inferred from the statutory language. …[T]he trial judge did not err in instructing the jury that "the existence of an association-in-fact is oftentimes more readily proven by what it *[sic]* does, rather than by abstract analysis of its structure." *Id*., at 111–112. This instruction properly conveyed the point we made in *Turkette* [10] that proof of a pattern of racketeering activity may be sufficient in a particular case to permit a jury to infer the existence of an association-in-fact enterprise.

> *Boyle,* 556 U.S. at 951.

On its face, the Complaint satisfies this test, a conclusion that is buttressed by additional analysis of the enterprise's features:

> From the terms of RICO, it is apparent that an association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose. As we succinctly put it in *Turkette,* an association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." 452 U.S. at 583, 101 S.Ct. 2524.

> *Boyle*, 556 U.S. at 946.  *See, also, Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1214 (11th Cir. 2018)("Sun Life's complaint easily permits the inference that Imperial and the producers entered into an agreement to effectuate Imperial's fraudulent plan.").

---

[9]  "All facts set forth in the complaint are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *See* Fed. R. Civ. P. 10(c).  *GSW, Inc. v. Long Cnty., Ga.,* 999 F.2d 1508, 1510 (11th Cir. 1993).

[10]  *United States v. Turkette*, 452 U.S. 576 (1981).

In addition to allegations allowing inference of a § 1962(c) association-in-fact enterprise, the Plaintiff has alleged each structural feature of the Deel RICO Enterprise[11] as shown below.

> a.     **PURPOSE.  The Deel RICO Enterprise includes a group of persons associated together for a common purpose.**

The Plaintiff has alleged that the Deel RICO Enterprise began in 2019 when Deel, Inc. began operating in regulated businesses without required licenses (including their money transmitter business).  (Complaint at ¶ 157).   Over time, the scope of that enterprise (and the number of participants) grew.  (Complaint, *passim*).   Throughout, the purpose was to disrupt entire U.S. industries by ignoring known licensing laws[12] and employment laws in order to create "contractor" customers out of employees (Complaint at ¶¶ 119, 27), to transmit money around the globe (to friends and enemies) without the regulatory "hassle" imposed by law, and to charge and collect fees reserved for licensed entities even though Defendants were not licensed, and all at the expense of the Plaintiff, other customers and the public.  (Complaint at ¶¶ 27, 53, 54, 60).

Defendants mischaracterize the Complaint in arguing that the alleged 'purpose was to 'maximize Deel's revenues and market share…'"  Motion at 12.  The Plaintiff did say profit was a motivator, but it is neither the purpose of the Deel RICO Enterprise or the get-out-of-jail-free card Defendants imply.[13]  Defendants' desire to profit in its business is not on its own improper but they may not profit at the Plaintiff's or the public's expense.[14]  And while it is not necessary

---

[11]  While Defendants have not challenged the sufficiency of the RICO conspiracy allegations, the necessary agreement may be inferred by each Defendant's claim of jointly seeking money transmission licenses after-the-fact.  (Motion at 12).  The elements of such an agreement are found in the Complaint.  (Complaint at ¶¶ 56, 130, 150, 151).  *See, Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1269 (11th Cir. 2004)(a RICO plaintiff must allege an agreement to violate "any of [RICO's] substantive provisions").

[12]  Defendants engaged in regulated business activities requiring licenses including money transmission, insurance, PEOs, and lending.  (Complaint at ¶¶ 55-57).

[13]  "Binance turned a blind eye to its legal obligations in the pursuit of profit", *supra* at 4, but it was guilty nonetheless.  *Id*.  The outcome in this case should be no different.

[14]  "[T]o apply the RICO statute in present circumstances is consistent with the statute's basic purposes [including to] protect[] the public from those who would unlawfully use an "enterprise" (whether legitimate or illegitimate) as a "vehicle" through which "unlawful ... activity is

to have a financial motivation to commit RICO crimes, neither is it irrelevant.  *See, National Organization for Women, Inc.*, 510 U.S. at 260, 262 ("predicate acts, such as the alleged extortion, may not benefit the protesters financially but still may drain money from the economy by harming businesses such as the … petitioners in this case. … RICO contains no economic motive requirement.").

> **b.     RELATIONSHIPS.  The Deel RICO Enterprise involves insider and outsider relationships among its associates.**

The Plaintiff alleges that Defendants individually and/or collectively as affiliates or associates in the Deel RICO Enterprise. [15] (Complaint, *passim*).   As for relationships, the Plaintiff alleges that each Defendant worked together in the Deel RICO Enterprise (Complaint at ¶¶ 130-135)(and as Defendants admit, Motion at 3), yet each retained independence and discretion as distinct legal entities.  (Complaint at ¶ 155).

In response to those allegations, Defendants felt compelled to reach beyond the Complaint and attempt to introduce evidence to conflate all three defendants into one (Deel, Inc. (a Delaware corporation), DPayments, Inc. (a Delaware limited liability company) and Jeremy Berger (an individual residing in Florida)) through extrinsic factual evidence.  Defendants then argue that, since all three are one and the same, there can be no enterprise.  That is not what Plaintiff has alleged, however, and the fiction of a single entity is unsupported by the facts as alleged or the law (and facts cannot be determined on a motion to dismiss).

First, the U.S. Supreme Court has held that an entity created under state law to shield its owners from personal liability is a legal entity distinct and separate from its owners, consistent with traditional state corporate law:

> The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal

---

committed," *National Organization for Women, Inc., supra,* at 259."  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164–65 (2001).

[15]  Because Deel, Inc. goes to great lengths to mask its business connections and licenses (by, *e.g.*, mischaracterizing "employees" as "contractors," including with respect to its own CEO and Berger (Complaint at ¶¶ 9, 25, 55.b.1, 55.c.), the Plaintiff cannot know every detail about the legal ownership, management and control of Defendants.  (Complaint at ¶ 136).  Therefore, she has alleged several plausible relationships in the disjunctive (a, b "or" c).  *Pincus*, 161 F. Supp. 3d at 1158 (denying motion to dismiss and allowing discovery to proceed).

status. And we can find nothing in the statute that requires more "separateness" than that. … After all, incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs. See *United States v. Bestfoods,* 524 U.S. 51, 61–62, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998); *Burnet v. Clark,* 287 U.S. 410, 415, 53 S.Ct. 207, 77 L.Ed. 397 (1932); 1 W. Fletcher, Cyclopedia of the Law of Private Corporations §§ 7, 14 (rev. ed.1999).

*Cedric Kushner Promotions, Ltd.*, 533 U.S. at 163.

The Complaint alleges that Berger the individual is "separate" from Deel the corporation, DPayments the limited liability company is separate from Deel and Berger, and each is therefore separate and distinct from the other.[16] Defendants also point to Plaintiff's allegations that DPayments and Berger may be affiliated parties, agents, employees or contractors of Deel, but fail to point out that those allegations are in the disjunctive (*supra*, n. 4) or that affiliates, agents, employees and contractors can be RICO participants.[17] Similarly, while the Plaintiff alleges that each Defendant may at times have been acting with some corporate affiliation, they could not be acting in an official capacity if engaged in unlawful activity. And, of course, certainty awaits discovery. *Pincus,* 161 F. Supp. 3d at 1160.

Second, the Eleventh Circuit, in denying a motion to dismiss a RICO claim, has held that "the principle … known as the 'intracorporate conspiracy doctrine,' does not apply to civil claims for RICO conspiracy." *Sun Life Assurance Company of Canada*, 904 F.3d at 1214.

Third, the Plaintiff has alleged that the Defendants are not alone in operating or managing the Deel RICO Enterprise but have also associated with outsiders. *See, Reves,* 507 U.S. at 179. Although not currently named as parties, the following persons are alleged to be part of the Deel RICO Enterprise:  Binance (Complaint at ¶ 21), T-Bank (Complaint at ¶¶ 49, 59-72, 81),

---

[16]  Although the Court should disregard Defendants' proffered evidence, it says nothing about DPayments' relationship to Deel or Berger.  (*E.g*., Motion at 2, Ex. D).

[17]  In order to "participate, directly or indirectly, in the conduct of such enterprise's affairs," one must have some part in directing those affairs. Of course, the word "participate" makes clear that RICO liability is not limited to those with primary responsibility for the enterprise's affairs, just as the phrase "directly or indirectly" makes clear that RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required. The "operation or management" test expresses this requirement in a formulation that is easy to apply. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993).

proprietary trading firms including My Forex Fund (Complaint at ¶ 20) and other unidentified persons and "partners" (Complaint at ¶¶ 46, 63, 66, 73, 96).  Thus, even if the Defendants' distinct legal entities were disregarded (which would be error), the Plaintiff has still alleged that they (it) associated with others to form and operate the Deel RICO Enterprise.

Fourth, and finally, relying on facts neither in the record or alleged, Defendants claim the Plaintiff has alleged no more than "routine corporate activities."  Motion at 10.  Putting aside the admission that it may be routine for Defendants to act and conspire to act without licenses to conduct their money transmitter business or an effective BSA program, the Plaintiff's allegations must be accepted as true.

Here, the Plaintiff has sufficiently alleged that Defendants' "routine corporate activities" are unlawful, part of the Deal RICO Enterprise, and part of Defendants' "regular way of doing business,"[18] (Complaint at ¶¶ 2, 42, 44, 55, 102, 107) and that "the illegal acts threatened repetition in the future."  (Complaint at ¶¶ 2, 55.a.4., 61, 69, 74, 125).

      c.    **LONGEVITY.  The longevity of the Deel RICO Enterprise has been (and remains) sufficient to permit its associates to pursue its purpose.**

The Plaintiff has alleged that Deel, Inc. commenced business in 2019 (Complaint at ¶ 17) with an unlawful purpose of evading state and federal money transmitter laws.  (Complaint at ¶¶ 19, 24).  She has further alleged that Deel, Inc. remains in business today (Complaint at ¶ 157.a.), meaning the Deel RICO Enterprise has been in existence for over five years.

The Plaintiff has also alleged that Berger became associated with the Deel RICO Enterprise while affiliated with Arival Bank[19] that he founded in 2018 (Complaint at ¶ 87), prior to the 2023 formation of DPayments, LLC (Complaint at ¶ 85).  The Complaint also alleges that Berger continues to be associated with the enterprise today.  (Complaint at ¶ 9).

---

[18] Cf. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1267 (11th Cir. 2004) (regarding conducting the affairs of the enterprise, "… to state a claim based on open-ended continuity … would require [plaintiffs] to allege either that the alleged acts were part of the defendants' "regular way of doing business," or that the illegal acts threatened repetition in the future. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 242–43 (1989)."  The Plaintiff has made such allegations here.  *Infra* at 10.

[19]  The Complaint alleges that Arival Bank was "the target of a failed acquisition attempt by Deel" prior to the formation of DPayments.  (Complaint at ¶ 14).

Although regulators (such as the Commissioner of Enforcement of the Minnesota Department of Commerce (¶¶ 99-102, Ex. E)) have begun to slow Defendants' and therefore the Deel RICO Enterprise's growth, the Plaintiff seeks to terminate the Deel RICO Enterprise with permanent injunctive relief barring Defendants from further violations of the law.[20]  As of this date, however, the enterprise is ongoing and its longevity has been sufficiently pled.  (Complaint at ¶ 157.a.).

    2.  **PATTERN.  The Deel RICO Enterprise is built on a continuous "pattern of racketeering activity" (predicate acts).**

The Plaintiff has alleged that the Deel RICO Enterprise was built on a "pattern of racketeering activity" of more than "two acts of racketeering activity" as required by RICO and defined in Section 1961(5).  (Complaint at ¶ 157 and *passim*).  On page 12 of the Motion, Defendants say only that the Plaintiff "fails to allege" such a pattern.  In fact, the Plaintiff has alleged dozens of such acts regarding Surge plus those affecting Class members (Complaint at ¶ 157 and *passim*) and Defendants challenge only the specificity of those allegations.  (Motion at 15).

    a.  **The Plaintiff plausibly alleges that Defendants have operated an unlicensed money transmitter business in violation of specific federal and state laws that constitutes a "pattern of racketeering activity."**

Beginning in paragraph 28, the Plaintiff carefully walks through the state and federal laws requiring licensing of Defendants (Complaint at ¶ 28).  She defines the terms "money transmitter" and "money services business" (Complaint at ¶ 33-38) under federal[21] and Florida law and then alleges that each Defendant is a "'money services business' as defined by Florida law and the laws of other states." (Complaint at ¶ 39).  The Complaint alleges Defendants knew

---

[20]  Even in Minnesota where Deel, Inc. is subject to a cease-and-desist order, Defendants continue to operate an unlicensed money transmitter business in violation of that order's 90-day window to become compliant.  (Complaint, Ex. E).  Thus, to protect the public and end the Deel RICO Enterprise, the Plaintiff is preparing motions for appropriate injunctive relief to prevent ongoing and future violations.

[21]  "As used in this chapter (1) '"racketeering activity"' means (A) … section 1960 (relating to illegal money transmitters), …"  18 U.S.C. § 1961(1)(A).

their money transmitter business was unlicensed and that they failed to implement an effective BSA program.  (Complaint at ¶¶ 2, 31, 32, 42, 44, 46, 49, 55.a.1.2, 55.a.1.7).

Next, the Plaintiff alleges that violation of Florida law[22] requiring money transmitter licensing is "a criminal act" that may be a felony.  (Complaint at ¶ 41).  She continues with allegations that "no Defendant appears to be licensed in any capacity under Chapter 560 or exempt from such licensing, and each is required to be so licensed."  (Complaint at ¶ 42).

In addition to Florida, the Plaintiff alleges that 47 states have similar laws and punishment, and, for ease of reference, compiles all of them into Exhibit A to the Complaint. (Complaint at ¶ 45 and Ex. A).  While Defendants ignore these allegations, they adequately allege the predicate acts of operating an UMTB with no effective BSA policy, each of which repeatedly violates state money transmitter laws.[23]

The Plaintiff's UMTB allegations are similar to (and find support in) other criminal cases.  For example, a criminal defendant was convicted of the Section 1960 RICO violations where underlying violations of state law are transformed into federal racketeering activity:

> Defendants in this case are charged in connection with their operation of an underground market in the virtual currency "Bitcoin" via the website "Silk Road." Defendant Faiella is charged with one count of operating an unlicensed money transmitting business in violation of 18 U.S.C. § 1960,[1] … and one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h). … Following indictment, Faiella moved to dismiss Count One of the Indictment on three grounds: first, that Bitcoin does not qualify as "money" under Section 1960; second, that operating a Bitcoin exchange does not constitute "transmitting" money under Section 1960; and third that Faiella is not a "money transmitter" under Section 1960. … Upon consideration, the Court now denies defendant Faiella's motion…
>
> If there were any ambiguity in this regard—and the Court finds none—the legislative history supports application of Section 1960 in this instance. Section 1960 was passed as

---

[22]  Defendants concede the adequate pleading of a Minnesota claim.  Motion at 16, n. 8.  The Plaintiff also alleges that other states' laws are comparable and have been violated by Defendants. (Complaint at ¶ 45, Ex. A).

[23]  As alleged in the Complaint, most states have similar money transmitter licensing and criminal penalty statutes.  For example, in upholding a criminal conviction for operating a money transmitter business without a license in Illinois, Ohio and Michigan, the Second Circuit found that: "[i]n Illinois, it is a felony for a person to 'engage in this State in the business of … transmitting money … without first obtaining a license under this Act.' 205 Ill. Comp. Stat. 657/10, 90." *United States v. Mazza-Alaluf*, 621 F.3d 205, 211–12 (2d Cir. 2010).

an anti-money laundering statute, designed "to prevent the movement of funds in connection with drug dealing." *United States v. Bah,* 574 F.3d 106, 112 (2d Cir.2009) (citing H.R.Rep. No. 107–250(I), at 54 (2001)). Congress was concerned that drug dealers would turn increasingly to "nonbank financial institutions" to "convert street currency into monetary instruments" in order to transmit the proceeds of their drug sales. S. Rep. 101–460, 1990 WL 201710 (1990). Section 1960 was drafted to address this "gaping hole in the money laundering deterrence effort." *Id.* Indeed, it is likely that Congress designed the statute to keep pace with such evolving threats, which is precisely why it drafted the statute to apply to any business involved in transferring "funds ... by any and all means." 18 U.S.C. § 1960(b)(2).

*United States v. Faiella*, 39 F. Supp. 3d 544, 545 (S.D.N.Y. 2014).

As in *Faiella*, Defendants allow customers to withdraw funds in crypto or fiat currency and have business relationships with crypto exchanges they describe as partners.[24] (Complaint at ¶¶ 46, 63, 66, 73, 96). Also, as in *Faiella*, Defendants seek to avoid Section 1960 liability because they claim the Plaintiff did not allege their knowledge and intent to commit their crimes. (*E.g.*, Motion at 13). Judge Rakoff denied Faiella's request for lenity (he claimed not to know that operating an UMTB was illegal).[25] Similarly, this Court should find knowledge irrelevant and that the Plaintiff is not required to plead either knowledge or intent.

The recent case of *U.S. v. Flashdot Ltd. (dba KuCoin) et al., Case No. 1:24-cr-00168* (S.D.N.Y. 2025) is also instructive. There, the DOJ alleged in 2024 that defendants were operating a criminal UMTB (involving fiat and crypto currency) and violating 18 U.S.C. § 1960, mirroring the Plaintiff's allegations against Defendants (Information at Ex. C). In announcing in January the defendants' guilty pleas and penalties of nearly $300 million, the DOJ summarized the case as follows:

> As a result of its operation of this business, KuCoin has …  been a money transmitting business required to register with FinCEN.[26] … As a money transmitting business,

---

[24] One such partner was Binance until it plead guilty (along with its founder) to Bank Secrecy Act violations including operating an unlicensed money transmitter business. (Complaint at ¶¶ 21, 102, 108); *supra*, at 10.

[25] Faiella later "pleaded guilty to Count One of a four-count indictment that charged him with operating an unlicensed money transmitting business in violation of Title 18 United States Code, Section 1960(b)(1)(B) and 1960 (b)(1)(C)." *Faiella v. United States*, 2019 WL 1960827, at *1 (S.D.N.Y. Apr. 2, 2019).

[26] FinCEN stands for The Financial Crimes Enforcement Network (FinCEN) established in April 1990 by Treasury Order Number 105-08. "FinCEN's mission is to safeguard the financial

> KuCoin was required to comply with applicable Bank Secrecy Act provisions requiring maintenance of an adequate AML program, including conducting KYC processes.  AML and KYC programs ensure that financial institutions, such as KuCoin, do not become havens for money laundering and other criminal actors. … Despite these obligations and its substantial presence in the U.S. market, KuCoin failed to implement an adequate KYC program.
>
> https://www.justice.gov/usao-sdny/pr/kucoin-pleads-guilty-unlicensed-money-transmission-charge-and-agrees-pay-penalties#:~:text=Danielle%20Sassoon%2C%20the%20United%20States,one%20count%20of%20operating%20an  (January 27, 2025)

The Plaintiff has alleged the same crimes against Defendants and, by comparison to the *KuCoin* indictment (Ex. C), they are sufficiently pled.

Finally, in addition to the Plaintiff having alleged such violations by Defendants, the Plaintiff attached to the Complaint actual evidence of proven violations.  (Complaint at ¶¶ 99-102, Ex. H, Minnesota Order; Complaint ¶ 107, Ex., Florida Order).   Such concrete evidence renders hollow Defendants' claim that the Plaintiff is merely "speculating" about Defendants' money transmitting business (Motion at 2, 3, 6, 8, 10, 13).  To the contrary, she has alleged that the Defendants' UMTB transmitted over $2 million around the world (Complaint at ¶ 6) and that Surge Capital paid money transmitter fees to Defendants while they were unlicensed and unable to lawfully collect such fees.  (Complaint at ¶¶ 142.f., 159).

In accordance with the plain language of the statute, each act of money transmission is an independent act of racketeering activity that necessarily results in a pattern of "two or more" predicate acts.  Similarly, each act accompanied by the ongoing failure to implement an effective BSA program is a separate predicate act.  Defendants offer no contrary authority.

       **b.**    **The Plaintiff plausibly alleges that Defendants have violated U.S. anti-money laundering laws by operating their UMTB with no effective BSA program (including AML and KYC) with repeated violations evidencing a separate "pattern of racketeering activity."**

As in *U.S. v. Flashdot Ltd.*, *supra*, the Plaintiff sufficiently alleges that Defendants violated the BSA anti-money laundering laws by failing to implement an effective BSA compliance program for their UMTB for the duration of the Deel RICO Enterprise.  (**Complaint**

---

system from illicit activity, counter money laundering and the financing of terrorism, and promote national security…"  https://www.fincen.gov/about

at ¶¶ 150, 156 and 157).  As a continuous and ongoing element of that enterprise (as defined by 18 U.S.C. §1962(a) and (c)), this constitutes a pattern of racketeering activity.

Defendants argue only that the Plaintiff "does not say" how they violated 31 U.S.C. § 5318(h)."  (Motion at 14).  To the contrary, the Plaintiff pled "how" throughout the Complaint, and, in particular, she sufficiently alleged that Defendants' failure to maintain an effective BSA program in connection with their UMTB violates 18 U.S.C. § 1960 and 31 U.S.C. § 5318(h).  (Complaint at ¶¶ 32, 55.a.i.2, 57, 58, 152 and 157.b.).

Entitled "Anti-money laundering programs," 31 U.S.C. § 5318(h) provides the "four pillars of AML." [27]  Like the FDIC Board in a recent case, the Plaintiff has alleged that Defendants "failed to comply with each of the BSA's four pillars—internal controls, independent testing, administration, and training…" *California Pac. Bank v. Fed. Deposit Ins. Corp.,* 885 F.3d 560, 575 (9th Cir. 2018).  The Plaintiff has alleged that Defendants have not satisfied any of these pillar requirements, including that of administration (compliance officer).

As Defendants point out, 31 U.S.C. § 5318(h) requires that Defendants "designate a compliance officer."  (Motion at 14).  In light of the fact that our country's national security is at risk, the BSA makes clear that Defendants cannot simply designate anyone; rather, they must designate someone capable of preventing money laundering, protecting the financial institution and protecting the public:

> The third pillar of compliance requires that banks "[d]esignate an individual or individuals responsible for coordinating and monitoring day-to-day compliance." 12 C.F.R. § 326.8 (c)(3). The FFIEC Manual [28] provides,

---

[27] **(h) Anti-money laundering programs.**--
> **(1) In general.**--In order to guard against money laundering and the financing of terrorism through financial institutions, each financial institution shall establish anti-money laundering and countering the financing of terrorism programs, including, at a minimum--
> **(A)** the development of internal policies, procedures, and controls;
> **(B)** the designation of a compliance officer;
> **(C)** an ongoing employee training program; and
> **(D)** an independent audit function to test programs.

[28]  The Federal Financial Institutions Examination Council (FFIEC) produces the BSA/AML Examination Manual that sets forth the FFIEC interagency standards for, *inter alia*, a designated BSA compliance officer; Cavallini does not meet those standards.  (*E.g.*, Complaint at ¶ 94 (Cavallini is subject of OCFI Order) and at ¶¶ 96-98 (Cavallini applies her own definition of risk

The BSA compliance officer should be fully knowledgeable of the BSA and all related regulations. The BSA compliance officer should also understand the bank's products, services, customers, entities, and geographic locations, and the potential money laundering and terrorist financing risks associated with those activities. The appointment of a BSA compliance officer is not sufficient to meet the regulatory requirement if that person does not have the expertise, authority, or time to satisfactorily complete the job.

The FDIC Board adopted the ALJ's finding that [compliance officer designate] Alan Chi lacked the experience, training, and time to adequately perform as BSA Officer. The Bank argues that this decision was not supported by substantial evidence, asserting that Alan Chi was qualified based on his experience serving in multiple roles at the Bank, his on-the-job training, and his prior interactions with the FDIC [but the Bank is mistaken].

*California Pac. Bank,* 885 F.3d at 578.

In this regard, the Plaintiff has alleged that Defendants' Compliance Officer Anastasia Cavallini fails to meet federal and state regulators' requirements (*e.g.*, Complaint at ¶ 43) and that such failure violates RICO because, *inter alia*, her Russian training was inadequate (Complaint at ¶ 89) and her prior interactions with the FDIC and other regulators (especially the Puerto Rico OCFI) caused Arival Bank to be the subject of an enforcement proceeding on her watch.  That proceeding resulted in an order and sealed report containing scathing findings of compliance dereliction of duty (Complaint at ¶¶ 7.a., 91-93, 97-98) and Ex. D (OCFI Arival Bank BSA/AML/KYC Violations Consent Order)) and disqualify her from serving as a compliance officer, BSA Officer, Chief Compliance Officer or any similar officer regardless of title.[29]  Absent a compliance officer, Defendants cannot comply with the BSA and thus cannot operate an UMTB even if licenses are obtained.

**3.  <u>CAUSATION</u>.  Defendants caused injury to the Plaintiff's and the Class's business and property, including through collection of unlawful fees.**

---

("re-risking" over "de-risking"), preferring it over that of the Department of Justice and state regulators.  *Id.*

[29]  Cavallini appears to function as Deel's and DPayments' "Chief Compliance Officer" but she maintains multiple titles, including BSA Officer for Deel, Inc. and Chief Compliance Officer ("CCO") for DPayments, LLC.  Deel, Inc. fails to identify a CCO on its website, implying there is no other CCO and that Cavallini, whatever her title, is *the* compliance officer for Deel, Inc., and thus the "chief."  Complaint at ¶¶ 92, 93, 96.  Discovery will ultimately confirm her titles and duties.  *See, Pincus*, 161 F. Supp. 3d at 1158.

Defendants argue that the Plaintiff has failed to allege proximate cause because her Complaint "does not account for … Mr. Seaman's illegal conduct [that] is a key intervening cause that cuts off any liability [of] Defendants…"  Motion at 8.  It is true that the Plaintiff does not account for Seaman's conduct as an intervening cause because it is no such thing.  The Plaintiff allege that Defendants are responsible for their conduct, not Seaman's, so Seaman's conduct is irrelevant.[30]

To set up this straw man, Defendants misrepresent to this Court that the Plaintiff has "cited extensively in the Complaint … to the SEC enforcement action" against Seaman (Motion at 8-9), but like Deel's representation of legal compliance, this representation is false.  The Plaintiff refers to that action only in the "Parties" section of her Complaint, and then only to establish the context for her claims because, as noted, Seaman is irrelevant.

Once that argument is stricken, Defendants only other argument is that, *as to DPayments only*[31], the calendar precludes alleging that it could have caused harm because it was not formed until December 2023.  The Plaintiff has alleged an enterprise beginning prior to 2023 involving all Defendants, however, and she has alleged that Berger's role pre-dated DPayments' formation.  *Supra*, at 10.  In light of this factual dispute, the Motion must be denied as certainty awaits discovery.  *See, Pincus*, 161 F. Supp. 3d at 1158).

In addition, the Plaintiff seeks injunctive relief against all Defendants and such relief would be meaningless without the inclusion of DPayments (and Berger).  (Complaint at ¶ 2).  The Plaintiff also seeks to represent a class of persons similarly, but not identically, situated, and

---

[30]  Even if the Plaintiff had alleged that Defendants were liable for Seaman's conduct, the Court would be unable to resolve such a factual dispute on a motion to dismiss since it would require the Court to consider matters outside of the pleadings and improperly weigh disputed versions of factual allegations.  The Plaintiff's ability to prove proximate causation is thus a matter for trial and not subject to attack on a motion to dismiss.  "A contention regarding proximate cause and superseding or intervening causes should be considered as specific denials . . . because they are direct challenges to a plaintiff's primary case." *Knights v. C. R. Bard Inc*., No. CV 19-11911-FDS, 20 WL 6142437, at *7 (D. Mass. Sept. 20, 2023).  As specific denials, a contention of intervening cause is a material issue of fact that precludes summary judgment let alone a motion to dismiss.  *Id.  See also* Fed. R. Civ. P. 8(c).

[31]  As for Deel, Inc. and Jeremy Berger, Defendants make no other argument and thus concede that causation has been sufficiently alleged as to them.

the timing of money transmission and other violations by Defendants will of course be different. In this way, Defendants improperly conflate class certification issues (*e.g.*, typicality) with the merits of the Plaintiff's claims.

Finally, causation is sufficiently alleged by alleging that Defendants have continuously operated an UMTB in violation of Section 1960 and charged (and still charging) unlawful fees for those services.  (Complaint at ¶).  Liability under that statute is strict and, by charging fees for those unlicensed services, Defendants have injured the Plaintiff and Class members (Defendants' customers) and the public.  *Id.*; *see, also*, *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 164-165.

    **4.  <u>INJURY</u>.  Defendants' conduct and collection of fees in operating its UMTB caused injury to the Plaintiff's and the Class's business or property.**

The final RICO element requires allegations of injury to the Plaintiff's and the Class's "business or property."  18 U.S.C. § 1964(c).  The Plaintiff has sufficiently alleged that her and Class members many payments of fees to Defendants is "injury" to both business and property and was caused by Defendants.  These injuries also satisfy the Plaintiff's requirement of establishing standing to bring these claims since payment of those fees constitutes multiple instances of direct, concrete injury (*see, Standing, infra*).

    **a.    By charging fees in their UMTB, Defendants have caused injury to the Plaintiff's and the Class's property.**

By charging fees[32] while operating an unlicensed money transmitter business, the Defendants have made millions of dollars and caused direct, individual harm to the Plaintiff's and the Class members' property.  (Complaint at ¶ 102).  Under RICO and state law, unlicensed business operators are not entitled to charge fees for their unlicensed services.  In *Pincus*, 161 F. Supp. 3d at 1160, the plaintiff alleged that his payment of credit card fees to an unlicensed money transmitter constituted damages that he was entitled to recover under Section 1960 and

---

[32]  Recoverable fees include those paid for unlicensed money transmission services and "profit or loss on the exchange of currency."  *Pincus*, 161 F. Supp. 3d at 1155, 1161 n. 2 (citing Fla. Stat.§ 560.204(1) that prohibits "…compensation, without first obtaining a license under this part. For purposes of this section, "compensation" includes profit or loss on the exchange of currency.)." This includes fees paid in connection with crypto currency transactions, *Faiella*, 39 F. Supp. 3d at 545, and, *e.g.*, Fla. Stat. § 560.103(14).

this Court, finding that "well settled common law principles in Florida … render[] a transaction with an unlicensed person void…", *id*., denied the motion to dismiss.  Although this Court in *Pincus* did not reach the merits of plaintiff's Section 1960 UMTB claims, in denying the motion, it necessarily found that the plaintiff had standing and had suffered an injury simply by paying money transmitter fees; the same result follows here.  *Pincus*, 161 F. Supp. 3d at 1160.

In their Motion, Defendants rely on *Singh v. Illusory Systems, Inc.,* 727 F. Supp. 3d 500 (2024) (Motion at 2, 9) because the court granted the defense motion to dismiss cryptocurrency hack claims under RICO.  That case is not on point, however, because unlike this case, the *Singh* plaintiff did not allege that he was a customer of an UMTB, that he paid fees for unlicensed services, or that he was entitled to recover any such fees as damages; rather, he specifically sought damages for acts caused by others.  *Id*. at 508, 509.  In contrast, here the Plaintiff has alleged that she was a customer of the Defendants' unlicensed money transmitter business, paid unlawful fees for those unlicensed services, and is entitled (along with Class members similarly situated) to recover from Defendants those fees as damages under 18 U.S.C. § 1964.

      **b.**      **By charging fees in their UMTB and failing to comply with BSA requirements of an effective BSA program, Defendants have caused injury to the Plaintiff's and the Class's business.**

In addition, Defendants have injured the Plaintiff's and Class members' business by operating an UMTB in violation of Section 1960 and failing to implement an effective BSA program as required by the BSA.  The Plaintiff paid Deel for the licensed, BSA compliant, non-enterprise money transmitter business services offered by Deel as sufficient to protect her, the Class and the public from the money laundering and terrorism risks identified by Congress when passing that law, but they received no such protection.  Similarly, she was entitled to (but did not receive) all related state and local government protections.

As the Supreme Court has held, RICO laws were enacted to protect the public as well as to provide private and public causes of action.  *Supra* at 8, 17, 19; *see*, *Cedric Kushner Promotions, Ltd.*, 533 U.S. at 164-165. Here, those protections were (and remain) missing and caused (and continue to cause) private and public harm.

### THE PLAINTIFF HAS STANDING

By alleging payment of unlawful UMTB fees as multiple, ongoing concrete injuries caused by Defendants to the Plaintiff's and Class's business and property, the Plaintiff has

standing in this Court.  Defendants' arguments to the contrary entirely depend on their mistaken assertion that Seaman was an intervening cause of those injuries (e.g., Motion at 2).  As demonstrated here, however, Seaman played no role in the harm caused by Defendants.  To the contrary, the concrete injuries suffered were caused only by (and traceable to) the conduct of Defendants and the Deel RICO Enterprise, and those injuries may be redressed by this Court.  *See Nicklaw v. CitiMortgage, Inc.,* 855 F.3d 1265 (11th Cir. 2017)(denial of rehearing en banc); *see also Ray*, 836 F.3d at 1348.

Defendants' reliance on *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 457 (2006) is misplaced.  There, the plaintiff sought damages caused by others rather than by defendants (as Defendants pretend in their faux "BACKGROUND" (Motion at 3-5).  In the instant case, the Plaintiff seeks only damages caused directly by, and traceable to, Defendants.  Although Defendants' failure to withhold taxes from misclassified employees may well be acts of fraud perpetrated on government tax and revenue agencies,[33] and may be part of the Deel RICO Enterprise, the Plaintiff seeks no damages caused by those acts or by Seaman's fraud.

**MOTION TO CHANGE VENUE**

The Plaintiff agrees that transfer is appropriate and asks this Court to exercise its discretion under 28 U.S.C. § 1404(a) and transfer this case to the Middle District of Florida (Ft. Myers Division) without delay.

**CONCLUSION**

For these reasons, the Plaintiff respectfully requests that the Court transfer venue to the Middle District of Florida (Ft. Myers Division) and, in light of the sufficiency of the Plaintiff's allegations, deny the Motion.

DATED:  February 6, 2025             **JOHNSON POPE BOKOR RUPPEL &**
                                         **BURNS, LLP**

                                         */s/ Guy M. Burns*
                                         Guy M. Burns, Esq.
                                         Florida Bar No. 160901
                                         400 N. Ashley Drive, Suite 3100

---

[33] *Cf. Anza*, 547 U.S. at 457 (addressing allegations of tax fraud).  These acts may also violate state and federal False Claims Acts, *e.g.*, 31 U.S.C. § 3729.

Tampa, Florida  33602
(813) 225-2500
guyb@jpfirm.com
conniel@jpfirm.com

*and*

**GRADY**LAW™

*/s/ Thomas R. Grady*
Thomas R. Grady, Esq.
Florida Bar No. 350702
720 Fifth Avenue South, Suite 200
Naples, Florida 34102
trgrady@gradylaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished on February 6, 2025, by the Court's CM/ECF electronic noticing system to all parties receiving electronic noticing.

*/s/ Guy M. Burns*
Guy M. Burns

***Damian v. Deel***
**Plaintiff's Opposition to Defendants' Motion to Dismiss**

### INDEX

**A.** *Binance Holdings* Information, *U.S.A. v. Binance Holdings Limited*, Case No. 2:23-CR-00178 (W.D. Wash. 2023) (criminal UMTB and related BSA violations)

**B.** *My Forex Funds* [34] CFTC Enforcement Action (Declaration confirming Deel's transfer of "more than $72 million in payments on behalf of [proprietary trader] defendant TGG [Traders Global Group, Inc. dba My Forex Funds] to 'paid contractors'")(Declaration at p. 13, para. 38)

**C.** *KuCoin*[35] Indictment (criminal UMTB and related BSA violations)

---

[34] *Commodity Futures Trading Commission*, 2023 WL 7545316, at *1.

[35] *U.S. v. Flashdot Ltd. (dba KuCoin) et al., Case No. 1:24-cr-00168* (S.D.N.Y. 2025).