# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
1:25-CV-20017-MARTINEZ/SANCHEZ

MELANIE DAMIAN, in her capacity as a court-appointed Receiver, on behalf of Surge Capital Ventures, LLC and others similarly situated,

    Plaintiff,

vs.

DEEL INC., a Delaware corporation, DPayments LLC, a Delaware limited liability company, and Jeremy Berger, Individually,

    Defendants.

RICO CLASS ACTION
JURY DEMANDED

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEEL INC.

Plaintiff, MELANIE DAMIAN, in her capacity as a court-appointed Receiver, on behalf of Surge Capital Ventures, LLC and others similarly situated ("DAMIAN"), by and through her undersigned counsel, pursuant to Fla. R. Civ. P. 1.350, requests Defendant, DEEL INC. ("DEEL"), to produce for copying and inspection the following documents and things in their possession or custody, or subject to their control. It is requested that the production be made at the offices of Johnson, Pope, Bokor, Ruppel & Burns, LLP, SunTrust Financial Centre, 400 North Ashley Drive, Suite 3100, Tampa, Florida 33602, within thirty (30) days after service of this request, or at such time and place as may be agreed upon between the respective parties.

### DEFINITIONS AND INSTRUCTIONS

Unless otherwise indicated, the following definitions shall be applicable.

1

1.	"Deel" means the defendant, Deel, Inc.; "DPayments" means the defendant DPayments, LLC.

2.	As utilized in Plaintiff's discovery, the word "Money" is defined to include U.S. dollar currency, any foreign currency, any fiat currency issued by any governmental entity, any virtual currency including any crypto currency or other virtual token which is used as a medium of exchange or payment. In your reply to any discovery request you should express in U.S. Dollars the total of all Money.

3.	"Money Transmitter" means an entity that receives currency, monetary value, a payment instrument or virtual currency for the purpose of acting as an intermediary to transmit currency, monetary value, a payment instrument, or virtual currency from one person to another location or person by any means, including transmission by wire, facsimile, electronic transfer, courier, the internet or through bill payment services within the United States or to or from the United States, and who has the ability to unilaterally execute or indefinitely prevent a transaction. "Money transmission" means conducting the activity of a money transmitter.

4.	"U.S. Customer" means any person or entity based in the United States who retained or contracted with Deel to act as a money transmitter from locations in the United States to third parties located either inside the United States or elsewhere in the world.

5.	"Worldwide Customer" is any person or entity based outside of the United States of America that retained or contracted with Deel to act as a money transmitter to third parties located in the United States.

6.	"U.S. Customer Agreement" means any standard form written contract utilized by Deel to state the duties, obligations, and other parameters applying to the money transmitter services provided by Deel to its U.S. Customers, including any online "Use Agreement" whereby Deel contends a customer is bound by terms and conditions by virtue of utilizing Deel's services.

2

7. "Worldwide Customer Agreement" means any standard form written contract utilized by Deel to state the duties, obligations, and other parameters applying to the money transmitter services provided by Deel to its Worldwide Customers, this includes any online "Use Agreement" whereby Deel contends a customer is bound by terms and conditions by virtue of utilizing Deel's services.

8. "Date of Inception" means the time with Deel first acted as a Money transmitter foe either a U.S. Customer or a Worldwide Customer, as defined above.

9. "Third Party Provider" means any third party that acted as a Money Transmitter for Deel and its U.S. Customers or Worldwide Customers.

10. "Surge" means Surge Capital Venture, LLC.

11. "Surge Affiliates" means any or all of the following: Surge Traders, LLC; Surge, LLC; Accanito Holdings, LLC; Accanito Capital Group, LLC; Accanito Equity, LLC; Accanito Equity II, LLC; Accanito Equity III, LLC; Accanito IV, LLC; and Brent Seaman.

12. "Compliance" means the acts, actions, rules, and/or practices of protocol that govern Deel's compliance with laws, Rules and regulations applicable to companies in the money services business and the activities of a Money Transmitter.

13. The terms, "you" or "your," as used herein, shall refer to Defendant, DEEL, and all its agents, employees, attorneys, representatives, and all other persons acting on behalf of the Defendant.

14. The terms, "person" or "persons," include all natural persons and entities, including without limitation, any individual, corporation, business, partnership, limited partnership, joint venture group, association, firm, trust, estate, public agency, department, bureau, board, body politic, unit, or other organization, and shall include all officers, directors, employees, agents, trustees, accountants, or any other representative thereof.

3

15. The term "identify" or equivalent language when applied to a person means to state the full name of such person, last known address, telephone number, and, if employed, give the job title or position of the person and the name, address and telephone number of the employer. If the words, "identify" or "identification," are used with respect to a person other than a natural person, state the type of person (corporation, partnership, government agency, etc.), full name and the address of its principal place of business concerned with each matter inquired of in these interrogatories. When asked to identify a person who has knowledge of any particular matter, if the response is made that a person other than a natural person has such knowledge, identify the individual or individuals employed by or associated with the person other than a natural person who possesses such knowledge.

16. The term "identify" or equivalent language when applied to a document or communication means to state its date (or if not dated, the date it was prepared or received), the type of document (e.g., letter, memorandum, telegram, chart, photographic reproduction), the author and its addressee, or title if there is no author and addressee, its present location, the individual or person presently the custodian or custodians thereof, and state a general description of its contents. If you have claimed or intend to claim any privilege recognized in law against the production of any document that you are required to identify herein, in addition to the foregoing information concerning such document, please state the number of pages of such document, and state whether such document contains or relates to facts or opinions or both and state the privilege which you have claimed or intend to claim with respect to such document.

17. The term "document" as used herein shall have the fullest meaning permitted under the Federal Rules of Civil Procedure, and refers at least to the following non-exclusive list of items: emails, texts, interoffice messages, correspondence, memoranda, listings, accounts, records of account, ledger sheets, audits, questionnaires, recordings, transcriptions, voice mails, floppy discs,

4

computer printouts, writings, drawings, graphs, charts, photographs, phonographs, videotapes, motion picture film, and any other data, compilation or written or printed material of any kind or character.

18.  The term "communication" means any written or oral transmission of fact, information, or opinion, including any utterance, notation, or statement of any nature whatsoever, including, but not limited to, emails and all other documents as defined herein.

19.  The documents requested shall be produced as they are maintained in the normal course of business.

20.  Documents that are maintained on paper shall be produced as scanned images at 300 DPI resolution, in text searchable PDF format that represents the full and complete information contained in the original document.

21.  Electronically stored information ("**ESI**") includes email and any attachments, word processing documents, spreadsheets, images, PowerPoints, text messages, voice mail, audio and video recordings, and other information normally kept on computers, servers, the cloud, and personal electronic devices.

22.  When producing ESI, document images shall be generated from electronic documents in a set of color 300 DPI text searchable PDFs, one PDF file per document, that reflects the full and complete information contained on the original document, together with a load file containing required metadata. In the event a document is redacted, the redacted text shall be withheld for that document.

23.  The following sets of files should be produced for all ESI:

    a. Load File:

        i. Each production includes a .dat metadata load file, which is a delimited text file format. The first row of the file contains a list of metadata

5

columns. Each subsequent row contains the metadata for a single document. Each column of each row contains one metadata value, with values encapsulated by a special "quote" character and columns separated by a special "separator" character throughout.

ii. The load file should use a thorn (þ, ASCII character 231) as a quote character and the special, non-printing character DC4 (ASCII character 20) as a separator.

iii. First line must contain the column/field names.

iv. The fields Begin Bates, End Bates, and NativePath must be present.

v. Each subsequent row must contain the metadata for one document.

vi. Every row must have the same number of columns/fields (empty values are acceptable).

vii. Text must be encoded in either ASCII, UTF-8, or UTF-16.

viii. Load File should be placed in the Data folder of the production in the root directory

b. Extracted Text and OCR Files (.txt files):

i. A single text file for each document containing all the document's pages, in text.

ii. Pages separated by form feed character (decimal 12, hex 0x0C).

iii. Filenames should be of the form: <Bates num>.txt, where <Bates num> is the Bates number of the first page of the document.

iv. Text and filenames must be encoded in UTF-8.

v. Files should be placed in the text/ subdirectory

c. Image Files:

      i. A single 300 DPI, color, text searchable PDF file per document.

     ii. Filenames should be of the form: <Bates num>.pdf, where <Bates num> is the BATES number of the first page of the document.

    iii. Files should be placed in the images/ subdirectory.

    iv. PDFs shall include searchable text embedded in the document.

     v. No other information should be provided in image filenames, including confidentiality status.

    vi. Filenames must be encoded in UTF-8

  d. Native Files:

      i. Filenames must be unique in the production, unless the content is identical.

     ii. The filename must retain the file extension corresponding to the original native format.

    iii. Each filename, including extension, must correspond to the NativePathmetadata field in its corresponding document's row in the load file.

    iv. Filenames must be encoded in UTF-8.

     v. Files should be placed in the natives/ subdirectory.

24. Unless otherwise noted, these requests seek documents created or acquired since January 1, 2021, through the present.

25. These document requests are continuing in nature pursuant to Rule 26(e)(1). Supplemental answers shall be provided in a timely manner as additional documents are located.

26. If you object to any discovery request on the basis of attorney, client or work product privilege, or any other privilege, state the privilege claimed and identify the document or communication for which such privilege is claimed, stating the following:

    a. The date thereof;

    b. The description of the document or communication protected, including the identity of all persons present, if an oral communication, or all persons who received a copy of such communication, if written; and,

    c. The subject matter of the document or communication.

27. These requests are continuing in nature and affect to the extent provided in the applicable rules and require supplementary production concerning any documents falling within the scope of the request that may come into the knowledge, custody, control or possession of Defendant subsequent to her response hereto.

## DOCUMENTS AND THINGS TO BE PRODUCED

1. Produce a copy of any standard form U.S. Customer Agreement used by Deel (including all revisions and amendments) from Date of Inception to the present.

2. Produce a copy of any standard form Worldwide Customer Agreement used by Deel (including all revisions and amendments) from Date of Inception to the present for its Worldwide Customers.

3. Produce a copy of any U.S. Customer Agreement between Surge and Deel for the performance by Deel of money transmission services.

4. Produce a copy of any U.S. Customer Agreement between Surge Affiliates and Deel for the performance by Deel of money transmission services.

5. Produce all documents and records of any nature or sort relating to Surge, including, but not limited to, all records of money transmissions made by Deel for Surge.

8

6. Produce all documents and communications of any nature or sort relating to Surge Affiliates, including, but not limited to, all records of money transmission made by Deel for Surge Affiliates.

7. Produce all documents, communications and records of any nature or sort relating to any fees or charges made by Deel to Surge.

8. Produce all documents, communications and records of any nature or sort relating to any fees or charges made by Deel for any Surge Affiliate.

9. Produce all documents furnished to or received from AH Capital Management, LLC (aka Andreessen Horowitz or a16z) and its affiliates and agendas regarding Deel's business plans and projections leading up to the $14 million Series A funding round in or around May 2020.

10. Produce all documents and constituting communications between AH Capital Management and Deel prior to the closing of the Series A funding round in or around May 2020.

11. Produce all documents furnished to or received from AH Capital Management, LLC (aka Andreessen Horowitz or a16z) and its affiliates and agents regarding the licensing requirements, licensing states (and licensing deficiencies) related to Deel conducting its business, including, but not limited to, its money transmissions business in the United States.

12. Produce all documents, including business plans and reports, furnished to any funding source(s) since the Date of Inception.

13. Produce all documents relating to the formation, ownership and purpose of DPayments, LLC.

14. Produce all documents evidencing communications with Jeremy Berger and/or DPayments (including any office employees or agents of DPayments) regarding money transmissions licenses.

15. Produce all documents relating to the efforts of DPayments (including all license applications) to receive money transmitter licensing, and related licensing, from any state in the United States.

16. Produce all status reports relating to the money licensing efforts of DPayments.

17. Produce all documents relating to any application by Deel to receive a money transmission license from any state in or territory of the United States.

18. Produce copies of all money transmission licenses (or confirmation of any such license) issued to Deel by any state in or territory of the United States.

19. Produce copies of all documents and communications relating to the State of Minnesota enforcement proceeding against Deel.

20. Produce all documents relating to any investigation, disciplinary or enforcement proceeding brought by any state, the U.S. government or any governmental department or regulator, concerning Deel, its license(s) (or lack thereof) and/or its business activities.

21. If Deel contends it relied in good faith on the advice of counsel regarding acting as a money transmitter without a license, produce any and all documents containing any advice of counsel, and also produce all documents and communications to or from that counsel relating to the issue of licensure.

22. If Deel contends that it rendered Money Transmitter services in the United States from the Date of Inception through the present through a Third Party Provider, produce all documents that memorialize or reflect any such Third Party Provider agreement or understanding.

23. Produce all communications between Deel and its Third Party Providers.

24. Produce all documents that identify the primary business address(es) in the United States since the Date of Inception.

25. Produce all compliance manuals, compliance guidelines, compliance standards, compliance directions, or any and all similar materials used by Deel from the Date of Inception through the present in order to ensure compliance with money transmission laws.

26. Produce all annual (or other periods) audits for Deel since the Date of Inception, including all notes, comments and letters related to such audits.

27. Produce the resume' or Curriculum Vitae of any person who served as Deel's Chief Compliance Officer (COO) from Date of Inception to the present.

28. Produce all documents relating to any Deel business or practice of transferring money to or from Russia including, but not limited to, all agreements, communications, memoranda of understanding, and/or procedures regarding Deel's money transmission activities.

DATED: July 11, 2025

**JOHNSON POPE BOKOR RUPPEL & BURNS, LLP**

*/s/ Guy M. Burns*
Guy M. Burns, Esq.
Fla. Bar No. 160901
400 North Ashley Drive, Suite 3100
Tampa, Florida 33602
(813) 225-2500
guyb@jpfirm.com
laurah@jpfirm.com

*and*

**GRADY**LAW™

*/s/ Thomas R. Grady*
Thomas R. Grady, Esq.
Fla. Bar No. 350702
720 Fifth Avenue South, Suite 200
Naples, Florida 34102
trgrady@gradylaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished on July 11, 2025, by the Court's CM/ECF electronic noticing system to all parties receiving electronic noticing.

*/s/ Guy M. Burns*
Guy M. Burns

*#10865302*