# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
1:25-CV-20017-MARTINEZ/SANCHEZ

MELANIE DAMIAN, in her capacity as a court-appointed Receiver, on behalf of Surge Capital Ventures, LLC and others similarly situated,

    Plaintiff,

vs.

DEEL INC., a Delaware corporation, DPayments LLC, a Delaware limited liability company, and Jeremy Berger, Individually,

    Defendants.

RICO CLASS ACTION
JURY DEMANDED

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT DPAYMENTS, LLC

Plaintiff, MELANIE DAMIAN, in her capacity as a court-appointed Receiver, on behalf of Surge Capital Ventures, LLC and others similarly situated ("DAMIAN"), by and through her undersigned counsel, pursuant to Fla. R. Civ. P. 1.350, requests Defendant, DPayments, LLC ("DPayments"), to respond to the following Interrogatories within thirty (30) days from the date hereof.

### DEFINITIONS AND INSTRUCTIONS

Unless otherwise indicated, the following definitions shall be applicable.

1.     "Deel" means the defendant Deel, Inc.

2.     "DPayments" means the defendant DPayments, LLC.

3.     As utilized in Plaintiff's discovery, the word "Money" is defined to include U.S. dollar currency, any foreign currency, any fiat currency issued by any governmental entity, any virtual currency

Page |1

including any crypto currency or other virtual token which is used as a medium of exchange or payment. In your reply to any discovery request you should express in U.S. Dollars the total of all Money.

4. "Money Transmitter" means an entity that receives currency, monetary value, a payment instrument or virtual currency for the purpose of acting as an intermediary to transmit currency, monetary value, a payment instrument, or virtual currency from one person to another location or person by any means, including transmission by wire, facsimile, electronic transfer, courier, the internet or through bill payment services within the United States or to or from the United States, and who has the ability to unilaterally execute or indefinitely prevent a transaction. "Money transmission" means conducting the activity of a money transmitter.

5. "U.S. Customer" means any person or entity based in the United States who retained or contracted with Deel and/or DPayments to act as a money transmitter from locations in the United States to third parties located either inside the United States or elsewhere in the world.

6. "Worldwide Customer" is any person or entity based outside of the United States of America that retained or contracted with Deel and/or DPayments to act as a money transmitter to third parties located in the United States.

7. "U.S. Customer Agreement" means any standard form written contract utilized by DPayments to state the duties, obligations, and other parameters applying to the money transmitter services provided by DPayments to its U.S. Customers, including any online "Use Agreement" whereby DPayments contends a customer is bound by terms and conditions by virtue of utilizing Deel's services.

8. "Worldwide Customer Agreement" means any standard form written contract utilized by DPayments to state the duties, obligations, and other parameters applying to the money transmitter services provided by DPayments to its Worldwide Customers, this includes any online "Use Agreement" whereby DPayments contends a customer is bound by terms and conditions by virtue of utilizing Deel's services.

9. "Date of Inception" means the time with DPayments first acted as a Money transmitter for either a U.S. Customer or a Worldwide Customer, as defined above.

10. "Third Party Provider" means any third party that acted as a Money Transmitter for Deel and its U.S. Customers or Worldwide Customers.

11. "Surge" means Surge Capital Venture, LLC.

12. "Surge Affiliates" means any or all of the following: Surge Traders, LLC; Surge, LLC; Accanito Holdings, LLC; Accanito Capital Group, LLC; Accanito Equity, LLC; Accanito Equity II, LLC; Accanito Equity III, LLC; Accanito IV, LLC; and Brent Seaman.

13. "Compliance" means the acts, actions, rules, and/or practices of protocol that govern DPayments's compliance with laws, Rules and regulations applicable to companies in the money services business and the activities of a Money Transmitter.

14. The terms, "you" or "your," as used herein, shall refer to Defendant, DPayments, and all its agents, employees, attorneys, representatives, and all other persons acting on behalf of the Defendant.

15. The terms, "person" or "persons," include all natural persons and entities, including without limitation, any individual, corporation, business, partnership, limited partnership, joint venture group, association, firm, trust, estate, public agency, department, bureau, board, body politic, unit, or other organization, and shall include all officers, directors, employees, agents, trustees, accountants, or any other representative thereof.

16. The term "identify" or equivalent language when applied to a person means to state the full name of such person, last known address, telephone number, and, if employed, give the job title or position of the person and the name, address and telephone number of the employer. If the words, "identify" or "identification," are used with respect to a person other than a natural person, state the type of person (corporation, partnership, government agency, etc.), full name and the address of its principal place of business concerned with each matter inquired of in these interrogatories. When asked to identify a person who has knowledge of any particular matter, if the response is made that a person other than a natural person has such knowledge, identify the individual or individuals employed by or associated with the person other than a natural person who possesses such knowledge.

17. The term "identify" or equivalent language when applied to a document or communication means to state its date (or if not dated, the date it was prepared or received), the type of document (e.g., letter, memorandum, telegram, chart, photographic reproduction), the author and its addressee, or title if there is no author and addressee, its present location, the individual or person presently the custodian or custodians thereof, and state a general description of its contents. If you have claimed or intend to claim any privilege recognized in law against the production of any document that you are required to identify herein, in addition to the foregoing information concerning such document, please state the number of pages of such document, and state whether such document contains or relates to facts or opinions or both and state the privilege which you have claimed or intend to claim with respect to such document.

18. The term "Document" as used herein shall have the fullest meaning permitted under the Federal Rules of Civil Procedure, and refers at least to the following non-exclusive list of items: emails, texts, interoffice messages, correspondence, memoranda, listings, accounts, records of account, ledger sheets, audits, questionnaires, recordings, transcriptions, voice mails, floppy discs, computer printouts, writings, drawings, graphs, charts, photographs, phonographs, videotapes, motion picture film, and any other data, compilation or written or printed material of any kind or character.

19. The term "Communication" means any written or oral transmission of fact, information, or opinion, including any utterance, notation, or statement of any nature whatsoever, including, but not limited to, emails and all other documents as defined herein.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

For all States within the United States, list which States have issued a money transmitter license to DPayments and, if any such license(s) were issued, the dates upon which each (or any) State issued such a license.

ANSWER:

**INTERROGATORY NO. 2:**

Since Date of Inception, state for each year the number of U.S. Customers for which DPayments performed money transmitter services.

ANSWER:

**INTERROGATORY NO. 3:**

Since Date of Inception, state for each year the number of DPayments's Worldwide Customers on whose behalf Deel has transmitted money to third parties in the United States.

ANSWER:

**INTERROGATORY NO. 4:**

For each year commencing with Date of Inception to the present, please state the amount of Money (stated in terms of U.S. dollars) DPayments's transmitted for its U.S. Customers.

ANSWER:

**INTERROGATORY NO. 5:**

For each year commencing with Date of Inception to the present, please state the amount of fees collected by DPayments from U.S. Customers for money transmission services.

ANSWER:

**INTERROGATORY NO. 6:**

For each year commencing with Date of Inception to the present, please state the amount of Money transmitted by DPayments for Worldwide Customers for third parties in the United States.

ANSWER:

**INTERROGATORY NO. 7:**

For each year commencing with Date of Inception to the present, please state the amount of fees collected by DPayments from Worldwide Customers for transmission of Money to third parties in the United States.

ANSWER:

**INTERROGATORY NO. 8:**

State the total amount of money transferred by DPayments on behalf of Surge and/or on behalf of Surge Affiliates.

ANSWER:

**INTERROGATORY NO. 9:**

State the total amount of fees and charges collected by DPayments from Surge and/or from Surge Affiliates.

ANSWER:

**INTERROGATORY NO. 10:**

If DPayments contends that it rendered Money Transmission services as a Third Party Provider for DPayments, identify the dates and the States when and where those Third Party money transmission services were provided.

ANSWER:

**INTERROGATORY NO. 11:**

Does DPayments contend that it relied in good faith the advice of counsel relating to its acting as a money transmitter for DPayments customers and, if so, please identify the counsel upon whom DPayments relied?

ANSWER:

**INTERROGATORY NO. 12:**

Identify DPayments's Chief Compliance Officer(s) (CCO) from the Date of Inception to the present and the dates during which each CCO served in that position.

ANSWER

**INTERROGATORY NO. 13:**

Does DPayments maintain electronic records from which it can identify the name, physical address and an electronic (email or text) address for its U.S. Customers and its Worldwide Customers since the Date of Inception?

ANSWER

### VERIFICATION

        DEEL INC.

        _____

        By: _____

        Its: _____

STATE OF _____

COUNTY OF _____

The foregoing instrument was acknowledged before me by means of ☐ physical presence or ☐ online notarization, by _____ who is personally known to me or who has produced _____ as identification and upon being first duly sworn deposes and says that the facts contained in the foregoing Answers to Interrogatories numbered 1 through 14 are true and correct to the best of his/her knowledge and belief.

SWORN TO AND SUBSCRIBED before me this ___ day of _____, 2025.

        _____
        NOTARY PUBLIC

        My Commission Expires:

*#10863364*